Parks *vs.* Parks, *et al.*

(Decided January 21st, 1863.)

JOHN PARKS *vs.* ELISHA PARKS AND OTHERS.

Ordinarily, parol evidence is not admissible to add to, vary or contradict a written instrument, but this rule cannot operate to exclude such evidence when offered to show the particular character of the subject matter of a deed, collaterally adduced, to support or oppose a controverted right to other property than that described by the deed.

It is a settled doctrine, that written instruments are to be interpreted according to their subject matter, and that parol evidence may be introduced to ascertain the qualities and nature of the subject to which the instrument refers ; *a fortiori*, is such evidence admissible to show the character of the property, in a case where the construction of the deed is not involved.

Where the question presented on evidence objected to, is not the construction of the instrument of writing, and is not between the parties thereto, but is, whether the estate as conveyed takes the character and legal properties of an advancement, or those of a full and absolute gift, the nature of the estate in these respects follows the intention of the donor, and that intention may be ascertained by parol evidence of the donor's declarations at the time of executing the conveyance, or of the donee's admissions afterwards, or by proof of facts and circumstances from which the intention may be inferred.

In the absence of such evidence as above mentioned, and of anything in the deed to indicate the intended character of the property conveyed, the law looking to the equal relationship and rights of other distributees, will presume the character most favorable to equal distribution to have been intended by the donor.

Where a bond of conveyance, and lease in pursuance thereof, are collaterally brought in question, and the exclusion of extrinsic evidence to show

their true design, would tend to defeat the provisions of our testamentary laws for the equal distribution of intestates' estates, such evidence for that reason, if for no other, should not be excluded.

Where lands were conveyed by a parent during his lifetime, to one of several children, by bond of conveyance and lease, in a proceeding in equity for the sale of other lands of the deceased parent for the purpose of distribution,—the question being whether the lands conveyed by the bond and lease were an advancement,—it was proved that the grantee had for many years worked the lands of the parent on shares, under contracts; but there was no proof that said grantee did not, during the period of such services, receive the full share of the produce to which he was entitled under said contracts, or that any obligation on either side under said contracts remained unsatisfied at the time the lease was executed. HELD: That the services of the son cannot be considered as having induced the execution of the bond and lease, so as to rebut the presumption of an advancement arising therefrom.

In contemplation of law, a father's natural love and affection moves equally to all his children, and the delivery or conveyance of a part of his estate, on that consideration, to one of them, supposes like if not equal beneficence to be intended to the others, and for that reason it implies that the donee shall take and hold the portion so conveyed, in virtue of the right to inherit the father's estate with the other children.

Where the property so conveyed consists of real estate, the presumption that a portion by way of advancement was intended, is strengthened; because such property affords to the donee benefits more consistent with the purposes of a permanent settlement, than would be conferred by a like conveyance or delivery of personal estate.

APPEAL from the Equity Side of the Circuit Court for Baltimore county.

The bill in this case was filed by the appellees against the appellant, on the 19th of December 1856, for the sale of the real estate of Peter Parks, deceased, for the purpose of distribution among the heirs at law of said deceased. The proceedings in the case, so far as they have reference to the matters here in controversy, and the evidence relating thereto, are stated in the opinion of this Court. The appeal is taken from an order of the Court below, (PRICE, J.,) passed in conformity with the following opinion:

"This case has been brought before the Court and has

Parks *vs.* Parks, *et al.*

been argued upon an exception to the allowance made to John Parks, in account 'B,' as stated by the auditor. It appears to me, from the whole evidence, that the property mentioned in the lease and bond of conveyance, was an advancement from Peter Parks to his son, John Parks, and ought to have been brought into hotch-pot. For this reason, I am of opinion that the exceptions should be sustained, and the auditor's account marked 'C,' confirmed. I have considered the above case as if the testimony of Nelson, excepted to by John Parks, was not in the case, and have not thought it necessary to express an opinion on the other points argued; nor upon the admissibility of the evidence excepted to by the solicitors of the exceptants, but have decided the case as if no such objections had been made."

The cause was argued before BARTOL, GOLDSBOROUGH and COCHRAN, J.

*Wm. B. Bond,* for the appellant:

The case on the exceptions filed, presents but two questions: 1st. Whether the appellant, John Parks, was paid or satisfied in any manner, either before or after the death of Peter Parks, his distributive share of the proceeds of sale of the said real estate, or made any settlement by which he released his share of the estate? And 2nd. Whether the bond or conveyance of the 9th of April 1851, by Peter Parks to John Parks, for the conveyance of two hundred and fourteen acres of land, was an advancement in the legal sense of that term?

The appellants contend that there was, in fact, no such agreement as relied on by the appellees, at the time of the arrangement for a confession of judgment by John Parks in favor of the administrators of Peter Parks, deceased; and that if such an agreement had been made, it would

have been *void*, there being no consideration for the release of a valuable interest in real estate, and no mutuality in the contract, and was *void* under the statute of frauds. *Tyson vs. Watt,* 7 *Gill,* 124. *Geiger vs. Green,* 4 *Gill,* 472.

Advancement is a question of intention on the part of the parent. *Haverstock vs. Sarbach,* 1 *Watts & Serg.,* 392. *Levering vs. Rittenhouse,* 4 *Whar.,* 138. *Meeker vs. Meeker,* 16 *Conn.,* 383. *King's Estate,* 6 *Whar.,* 370. The proof shows that valuable services were rendered by the appellant to his father, rebutting the inference that the father intended the two hundred and fourteen acres as an advancement. The value of the property itself, is an argument against its being considered an advancement. Every advancement includes the idea of an accountability after the death of the parent, and the value of the land must exclude the idea that John Parks was to be held accountable for it after the death of his father. The evidence of the appellant on this point is admissible, not to contradict, vary or add to the consideration set forth in the conveyance, but to prove an intention on the part of the father, that this land was not meant to be an advancement, or to be accounted for afterwards. This evidence is admissible even to show the consideration for the conveyance. *Newell vs. Newell,* 13 *Vt.,* 24. *Christman vs. Siegfried,* 5 *Watts & Serg.,* 400. *Scott vs. Scott,* 1 *Mass. Rep.,* 527. *Murrell vs. Murrell,* 2 *Strobhart Eq. Rep.,* 148. *Stewart vs. The State,* 2 *H. & G.,* 119.

The Act of 1820, ch. 191, sec. 5, only makes the conveyance or gift to a child an advancement, when the other children, or any one of them, is unprovided for. But the proof in this case shows that all the other children were provided for, by the distribution of $10,000 among them, to the exclusion of John.

*I. Nevett Steele,* for the appellees:

An advancement is a voluntary settlement by a parent upon a child, especially where land is the subject of the conveyance. Land conveyed upon a *good,* as contradistinguished from a *valuable* consideration, constitutes an advancement. *Hatch vs. Straight,* 3 *Conn.,* 31. *Notley Young's Estate,* 3 *Md. Ch. Dec.,* 461.

The bond of conveyance of 1851, from Peter Parks to John Parks, and the lease therein referred to, constitute an advancement to John to the extent of the value of the two hundred and fourteen acres, to which the said instruments relate; and John is consequently not entitled to a share of his father's estate, without bringing said two hundred and fourteen acres into hotch-pot. *Hayden vs. Burch,* 9 *Gill,* 81. *State vs. Jamieson,* 3 *G. & J.,* 442. *Stewart vs. State,* 2 *H. & G.,* 114. *Worthington vs. Bullitt,* 6 *Md. Rep.,* 198. *Powell vs. Powell,* 5 *Dana,* 171. *Thompson vs. Thompson,* 1 *Yerger,* 97. *Robinson vs. Robinson,* 4 *Humphrey's Rep.,* 392. *Edwards vs. Freeman,* 2 *P. Wms.,* 435. Act of 1820, ch. 191, sec 5; and 1798, ch. 101, sub-ch. 11, sec. 6. The whole object of these Acts was to promote equality, and they should be construed in *pari materia.* See also, 1 *Thos. Coke,* 720. 3 *Id.,* 317, 318. *Id.,* 176, *b.* 1 *Swinburne on Wills, Part* 3, sec. 18, *p.* 337.

There is no sufficient evidence in the cause that the real consideration for the bond of conveyance and lease, was services rendered by John, even if such evidence was admissible to contradict such instruments, which is denied. *Fawkner vs. Watts,* 1 *Atk.,* 407.

COCHRAN, J., delivered the opinion of this Court:

The proceedings in this case were originally instituted by Elisha Parks and others, for the purpose of procuring a sale of the real estate of Peter Parks, deceased, and a distribution of the proceeds among his heirs at law. The

property was sold, and upon the trustee's report of the sale, the auditor stated two accounts, B and C, making entire but different distributions of the proceeds of the sale to the several persons claiming and entitled to claim as distributees.   By account B, the distributive share of each child of the deceased was ascertained to . be $2,066.47, and that amount was audited to the appellant, as one of the children.   By account C, stated under instructions from the appellees, the appellant was entirely excluded from the distribution, and the portion claimed by him, as shown in account B, properly apportioned among the other distributees and heirs at law.   The first of these accounts was ratified *nisi*, and excepted to by the appellees, on the alleged ground that the appellant was not entitled to claim or have any portion of the fund to be distributed.   Testimony was taken by the auditor on the question presented by the exceptions, upon which the Court passed an order sustaining the exceptions and ratifying account C, by which the appellant was excluded from the distribution, from which order this appeal was taken.

The exceptions to account B, upon which the question for our determination arises, were:  1st.  Because the claim or share of the appellant, as one of the heirs at law of Peter Parks, had been previously "paid and satisfied;" and 2nd, because the other heirs at law had settled any claim the appellant might have had against his father's estate, by an arrangement upon which the appellant confessed a judgment to that estate, for a sum or balance above his claim as one of the heirs at law.   From the evidence, the last exception appears to have been predicated upon an alleged agreement made in a suit brought by the administrators of Peter Parks against the appellant, that a settlement of all claims of the estate against the appellant, and of all claims of the appellant against the estate, should be effected by his confession of a judgment for $1,500, with a stay of execution

without interest. The evidence offered to show that such an agreement was made, at most, only proves that a mere verbal arrangement to that effect preceded the confession of the judgment. There is nothing to show that there was a consideration for the agreement, or that it was at any time reduced to writing, nor does it appear by any order or paper in the case to have constituted any part of the terms upon which the judgment was confessed. Having been objected to as void under the statute of frauds, for these reasons, it is sufficient to say that the exception founded upon it, though not formally abandoned, was not relied on by the appellees in the argument of the case.

To sustain the 1st exception, the appellees offered in evidence a bond executed in consideration of natural love and affection, and the sum of twenty-five dollars, by Peter Parks to John, on the 29th of April 1851, for a conveyance of the reversion of a tract of land containing two hundred and fourteen acres, recited in the bond as leased by him to John, on the 14th of March 1848, for ninety-nine years, renewable, &c., and subject to an annual rent of one dollar. The testimony of several witnesses was also taken, from which it appears that the property described in the bond and lease executed to John Parks, equalled in value the whole of the remaining real estate of Peter Parks, sold by the trustee under the original proceedings in this case. It also appears that John, when a young man, returned home and purchased from his father, Peter Parks, the stock on the farm, and entered into a contract with him to carry on the farm on shares, which contract, by the admission of both of them to the witness, Bozley, was continued until the father purchased the property described in the bond and lease. After the purchase of that tract, John entered into a like contract to carry it on, and moved from the home place to it for that purpose. The testimony of Parrish, offered by the appellant, proves that he wrote the

42    v.19

lease recited in the bond, and that Peter Parks remarked that his reason for giving the lease to John, was in part "because his wife would not sign away her right," and further, "because John had done more for him than all the rest of his children," and had also a "lame daughter to support." Upon this evidence the appellees contend that the property described in the lease and bond was conveyed to John Parks as an advancement from his father's estate, and that John, for that reason, is not entitled to participate in the distribution of the proceeds of the remainder of his father's real estate, without bringing the portion so advanced into account. On the other hand, the appellant contends that the evidence proves valuable services were rendered by him for his father, and that the proof of such services rebuts the inference that an advancement was intended by the bond and lease of the 214 acres. The evidence relied on by the appellants, establishing the fact of services rendered, was objected to in argument by the appellees, as inadmissible for that purpose, on the ground that its effect was to vary the consideration set forth in the bond and lease.

Ordinarily, parol evidence is not admissible to add to, vary or contradict a written instrument. We do not think that rule can operate to exclude such evidence when offered to show the particular character of the subject matter of a deed collaterally adduced to support or oppose a controverted right to other property than that described by the deed. It is a settled doctrine, that written instruments are to be interpreted according to their subject matter, and that parol evidence may be introduced to ascertain the qualities and nature of the subject to which the instrument refers. *Greenleaf Ev.*, 286. If a deed may be construed by the aid of parol evidence of the nature and qualities of the property conveyed, there certainly can be no objection to the admission of such evidence to show the character of

the property in a case where the construction of the deed is not involved. The question presented on the evidence objected to, is not one of construction of the bond and lease, nor does it arise between the parties thereto, nor can the determination of it either way affect or change their rights or obligations as they stand upon these instruments; but it is, as to the peculiar nature and properties of the estate conveyed, in respect to which these papers are silent; or, in other words, whether that estate, as conveyed, takes the character and legal properties of an advancement, or those of a full and absolute gift, without a view to a portion or settlement. The nature of the estate in these respects follows the intention of the donor, and that intention, as we understand the authorities, may be ascertained by parol evidence of the donor's declarations at the time of executing the conveyance, or of the donee's admissions afterwards, or by proof of facts and circumstances from which the intention may be inferred. In the absence of such evidence, and of anything in the deed to indicate the intended character of the property conveyed, the law looking to the equal relationship and right of other distributees, will presume the character most favorable to equal distribution to have been intended by the donor. *Powell vs. Powell*, 5 *Dana*, 171. *Levering vs. Rittenhouse*, 4 *Whar.*, 138. *King's Estate*, 6 *Whar.*, 370. *Murrell vs. Murrell*, 2 *Strobhart*, 148. 4 *Kent Com.*, 418. *Stewart vs. State*, 2 *H. & G.*, 114. *Stewart vs. Patterson's Ex'rs*, 8 *Gill*, 46.

There is no effort made in this case to impeach or defeat the title of the appellant under the bond and lease, nor to alter or impair his rights, so far as they relate to the property described in them; but the inquiry is as to rights to other property, in regard to which the bond and lease are incidentally used as evidence. Of these papers thus collaterally brought in question, it may be observed that the exclusion of extrinsic evidence to show their true design,

would tend to defeat the provisions of our testamentary laws for the equal distribution of intestate's estates; and that such evidence for that reason, if for no other, should not be excluded. *Stewart vs. State*, 2 *H. & G.*, 114.

Upon this view we have to consider whether the evidence offered has the effect ascribed to it by the appellant,—of rebutting the inference that an advancement to him was intended by the property described in the bond and lease. The fact that the appellant was engaged for several years in the conduct and management of his father's property, is clearly proved, but it also appears from the admissions of both father and son, made to the witness, Bozley, that those services were not gratuitous, but were rendered under contracts. He purchased the stock, and commenced the management of his father's farm under a contract for a share of the produce derived from it. A like agreement was made for his management and occupancy of the tract described in the lease, and in the absence of evidence that the contract was abandoned, the inference is, that it continued until the relation of the parties was changed by the execution of that instrument. There is no evidence that the appellant during this period did not receive the full share of the produce to which he was entitled by his contract, nor is there any to justify the conclusion that any obligation on either side, originating in their relations as contracting parties, remained unsatisfied at the time the lease.was executed. Under these circumstances the appellant's services cannot be considered as having induced the execution of the bond and lease, nor can they justify the inference that an advancement was not intended by the property they describe. The declarations of the father to Parrish, at the time the lease was prepared, do not strengthen the case in this respect, for they were as consistent with the purpose of making an advancement, as with that of making a gift, without a view to a portion or

settlement, and the question as to the character of the property held by the appellant under the bond and lease, notwithstanding the evidence relied on by him as ascertaining it, must be determined by legal presumption from these papers, and the equal relationship of the contesting parties as heirs at law.

Taking into consideration the value of the property, for the conveyance of which the bond was given, as shown by the testimony of all the witnesses examined on that point, the money consideration recited in that instrument must be held as merely nominal. The declarations made by the donor to Parrish, show that the transfer of the title to the appellant was not contemplated on the ground of any specific valuable consideration, but that it originated in a beneficent purpose, and was founded on the consideration of natural love and affection, as recited in the bond. In contemplation of law, a father's natural love and affection move equally to his children, and the delivery or conveyance of a part of his estate on that consideration to one of them, supposes like if not equal beneficence to be intended to the others, and for that reason it implies that the donee shall take and hold the portion so conveyed in virtue of the right to inherit with the other children the father's estate. Where the property so conveyed consists of real estate, the presumption that a portion by way of advancement was intended, is strengthened, because such property affords to the donee benefits more consistent with the purposes of a permanent settlement, than would be conferred by a like conveyance or delivery of personal estate.

In the absence of evidence to show that the appellant took the property described in some other character than that of an advancement, the law, as shown by the authorities to which we have referred, will presume that it was intended to be an advancement, and that the appellant, in his relationship to the other distributees, is not entitled to

claim or hold it in any other character more prejudicial to their distributive rights.

Upon a careful review of the whole case, we think the tract of 214 acres was granted to the appellant as an advancement from his father's estate, and that he is not entitled ·to participate in the present distribution without bringing that property into account.

Having discovered no error in the decree of the Court below, we therefore affirm it, with costs to the appellees.

*Decree affirmed.*