Clark *et al. vs.* Willson, Adm'x.   Clark *et al. vs.* Willson *et al.*

(Decided 12th November, 1867.)

---

JAMES A. CLARK and others *vs.* MARY WILLSON, Adm'x of JOHN W. WILLSON. JAMES A. CLARK and others *vs.* MARY WILLSON and others.

*Evidence—Time when the value of an Advancement is to be estimated—Advancement.*

An advancement is a giving by anticipation, the whole or a part of what it is supposed, a child will be entitled to receive, on the death of the parent making it, and dying intestate; and is to be distinguished from a debt due, or from an absolute or independent gift or conveyance, having no view whatever to a portion or settlement.

Clark *et al. vs.* Willson, Adm'x.    Clark *et al. vs.* Willson *et al.*

It is not necessary to constitute an advancement, that the provision should take place in the parent's lifetime. A portion secured to the child *in futuro*, or to commence after the father's death, or upon a contingency that has happened, or to arise within a reasonable time, is an advancement.

It is a presumption of law in this State, liable, however, to be repelled or rebutted by evidence proper for the purpose, that a gift from parent to child unexplained at the time, or a conveyance which is silent as to its design, is an advancement.

The introduction of proof properly admissible, to repel the legal presumption which would attach to a conveyance from a parent to a child, as showing it to have been intended as an advancement, does not contravene the general rule of evidence, excluding parol proof, to explain or vary the terms of a written contract.

Where an advancement is brought into hotchpot, its value must be estimated as of the time, when it is received, that is, at the time when it is made complete by its actual possession and enjoyment.

APPEAL from the Orphans' Court of Baltimore City, and also an

APPEAL from the Circuit Court of Baltimore City.

These two cases present substantially the same questions. John W. Willson was twice married. The surviving children by the first marriage, with the husbands of three of the daughters respectively, are the appellants in these cases. Willson's first wife died in April, 1842, and on the 23d April, 1844, he executed a deed to David Stewart, by which, for a nominal consideration, he conveyed to said Stewart valuable fee-simple and leasehold property, in trust for himself during his natural life, without impeachment of waste, and, after his death, in trust for the use and benefit of his children therein named, the fruit of his first marriage. In the year 1846 or 1847, Willson married a second time, and died in 1864, intestate, leaving his second wife and six infant children surviving him, who are the appellees in these cases. His widow administered upon his personal estate. After his death a decree of the Circuit Court of Baltimore

City was obtained for a sale of the property conveyed to Stewart by the deed of April, 1844, and a distribution of the proceeds thereof, among the surviving children of the first marriage. The said children of the first marriage, who were the distributees of this estate, filed a petition on the 30th of January, 1867, in the Orphans' Court of Baltimore City, seeking for a distribution of the personal estate (exclusive of said trust estate,) of their deceased father, and claiming the right to share equally therein with the children of the second marriage. After answer by the widow to said petition, admitting a surplus after payment of debts, and consideration by the Court, it was ordered, on the 2d March, 1867, that the leasehold property conveyed in trust, for the benefit of said petitioners, by the deed of April, 1844, should be deemed as an advancement of a portion of their father's estate, and in the distribution to be made by the administratrix, should be reckoned in the surplus, and rated at its value at the time of the death of said Willson, when the petitioners received it. From this order, the petitioners appealed, and this constitutes the first case. The second case arises upon an appeal from the decree of the Circuit Court of Baltimore City, passed on the 22d March, 1867, upon proceedings instituted by the same parties, asking for a sale of the real estate of their deceased father, not embraced in the deed of trust of April, 1844, and a distribution of the proceeds thereof, among his heirs. By this decree it was adjudged that the real estate conveyed by the deed of April, 1844, was an advancement to the children of the first marriage, and that they could only come into partition with the children of the second marriage, on bringing such real estate, or the value thereof at the time of the death of their father, when the same was in fact received by them, into hotchpot, with the estate descended. Testimony was taken on either side to show the intention of Willson in making the deed

of 1844, which was excepted to in the Court below, on the ground that the witnesses were not present at its execution, and that the declarations of Willson offered in evidence, were not made at the time of its execution ; and the exceptions were sustained.

The cause was argued before Bowie, C. J., Bartol and Weisel, J.

*Robert C. Barry*, for the appellants, contended :

1st. That although the legal title to the property conveyed by the 'said deed of trust, was at that time in the said John W. Willson, yet his repeated declarations, that it was his wife's property, are conclusive as against those now claiming under him.  He could not have been compelled to execute the said deed, but having executed it, it became binding on him, and on his heirs.  It was, in fact, but an anticipation by him of the provisions of the second section of Article 45 of the Code of Public General Laws.

2d. That where there are several sets of children, the property of one set of children from their own mother, or from any other person, is not a subject for hotchpot in distributing the father's estate.

3d. That the facts and circumstances of the case show that the father did not intend the property so conveyed by the deed of trust, as *an advancement, portion or settlement*, but as a disposition thereof in accordance with a moral obligation.  *Code of Pub. Genl. Laws, Art.* 47, *sec.* 31, *Art.* 93, *sec.* 126; *Stewart and Wife et al. vs. Pattison's Exc'r et al.*, 8 *Gill*, 54, 58 ; *Parks vs. Parks et al.*, 19 *Md. Rep.*, 323, 331; *Cecil vs. Cecil et al.*, 20 *Md. Rep.*, 156.

4th. That if the children of the first marriage are bound, in the distribution of their father's estate, to bring into hotchpot, the portion they received of their mother's estate, then it should be accounted for at its value, when

they obtained it, being the date of the deed of trust, and that in estimating its value, the value of the life estate of the father should be deducted, so as to ascertain the value of the remainder to the children. *Oyster vs. Oyster*, 1 *Serg. & Rawle*, 422; *Toomer vs. Toomer*, 1 *Murphey*, (*N. C. Reps.*,) 93; *Warfield vs. Warfield et al.*, 5 *Harr. & Johns.*, 459.

*I. Nevett Steele*, for the appellees.

The deed executed by Mr. Willson in April, 1844, being a voluntary deed, founded on no other consideration than natural love and affection, and conveying land from a father to his children, is presumed and held in law to be an advancement. This presumption can only be rebutted by clear and satisfactory proof, that the parent intended the property conveyed, to be an absolute gift in addition to, (and not a part of) a share of his estate. Dying intestate, he leaves the law to make his will, and while the law cannot take from his children that which he has conveyed to them, it will distribute the balance of his estate in such manner as to produce equality as far as practicable, among all his children, unless his intention to the contrary is clearly established. *Parks vs. Parks et al.*, 19 *Md. Rep.*, 330 *to* 334; *Cecil vs. Cecil et al.*, 20 *Md. Rep.*, 153; *Edwards vs. Freeman*, 2 *Peere Williams Rep.*, 435; *Toller's Law of Executors*, 377, 378; *Code Pub. Gen'l Laws, Art.* 47, *Sec.* 31 *and Art.* 93, *Sec.* 126.

The evidence in this case, whether the testimony of the three witnesses examined, or that of Mrs. Turner only, be considered, entirely fails to show that Mr. Willson meant this conveyance to be an absolute gift, as contra-distinguished from an advancement or portion of his estate. The three pieces of property conveyed by the deed, belonged to Mr. Willson, had been purchased by him and held by him for many years. The three deeds showing these purchases, are in evidence in the cause. The prop-

erty then being absolutely his, all that the evidence shows, is the motive which influenced him in conveying to his children, and not his intention as to whether the conveyance should be an absolute gift, or as a portion.   As the evidence shows that the reason why Mr. Willson made the conveyance, was, in part at least, because he contemplated a second marriage, it would seem clear, that if he thought and meant, that the children of the first marriage should have the property conveyed, because it was earned during the first marriage, then he must at the same time have thought and meant that they should not have what might be earned during the second marriage, and that such earnings should go to the children of that marriage. If the testimony of Mrs. Turner be admissible, which is denied, no reason is perceived why the testimony of the other witnesses should not also be admitted.

The value of the property should be estimated at the time it was received by the *cestuis que trust,* which was after Mr. Willson's death.   In ordinary cases of advancement, the property is received by the child at the same time that the deed or gift is made.   In such cases the value of the property is estimated, as of the time when it was so received, delivered or given, for then, those words are convertible, and have the same meaning.   But when the deed is made at one time, and the gift is to take effect in possession at a future time, it is contended, that the value of the property should be taken as of that time, at which, by the terms of the deed or gift, the property was to be actually received or delivered.   This question has not been decided in Maryland, in any reported case.   The case of *Warfield vs. Warfield et al., in* 5 *H. & J.,* 459, simply carries out the provision of our Maryland Act of descent and inheritance, by estimating the value at the time when the property was received.   The true rule, when a life estate has been reserved by the father, is to be found in the following cases: *Hook vs. Hook,* 13 *B.*

Clark *et al. vs.* Willson, Adm'x.  Clark *et al. vs.* Willson *et al.*

*Monroe,* 526; *Wilk's Adm'r vs. Greer et al.,* 14 *Alabama,* 437.

Weisel, J., delivered the opinion of this Court.

These causes involve the same questions, and the proof introduced into the one, with other admitted facts, was by agreement, made a part of the other and to the same extent and effect.  John W. Willson, the husband of Mary Willson, by a second marriage, and the father of the remaining parties, executed in his lifetime and before his marriage with the said Mary, a deed of trust of certain leasehold and fee simple property, for the benefit, after his death, of his children by his first marriage; the appellants, in both of these appeals, who were the parties, petitioners and complainants in the respective proceedings below; the one in the Orphans' Court for Baltimore City touching the leasehold; the other in the Circuit Court of Baltimore City, being a bill for a partition or sale in equity of the real estate in fee, of which said John W. Willson died seized, and intestate.  The only questions decided below, and now under review, were, whether the properties conveyed by the deed of trust on the 23d of April, 1844, to David Stuart, were given as an advancement to the *cestuis que trust,* (the petitioners and complainants below,) and if so, and brought into hotchpot, at what time their valuation should be made, at the date of the conveyance, or at the death of the grantor and intestate, in 1864, when the parties entitled were put in actual possession and enjoyment?  The decree of the Orphans' Court, as to the leasehold, and that of the Circuit Court of Baltimore City as to the realty, are the same.  They declare the respective properties as advancements, and direct that the one should be reckoned in the surplus of the personal estate at its value, at the time of the death of the intestate; and that the real estate or the value thereof, at the time of the death aforesaid, should be brought into hotchpot with the

estate descended, if the complainants elect to come into partition with the infant defendants ; otherwise to be excluded from the distribution of the proceeds of sale of the estate descended.    We think there was no error in either of these decrees, and that both should be affirmed.

An advancement is a giving by anticipation the whole or a part of what it is supposed a child will be entitled to, on the death of the parent making it and dying intestate. 17 *Mass.*, 358.    It is to be distinguished from a debt due, or from an absolute or independent gift or conveyance, having no view whatever to a portion or settlement.    And, therefore, where a gift from parent to child is unexplained at the time, or a conveyance is silent as to its design, it is the province of the law to declare its proper effect.    In some States, as in Massachusetts, it must be proved to have been intended as an advancement, or it will be deemed an absolute gift.    But in England, and in various States in this Union, and in this State, the presumption of law is, that it is an advancement, liable to be repelled or rebutted by evidence proper for the purpose.    In such cases the law leans in favor of the equitable rule of equality, which distinguishes all Statutes of Distribution.    "In the absence of such evidence," (remarks our lately deceased brother Cochran, in his opinion in *Parks vs. Parks et al.*, 19 *Md.*, 331,) "and of anything in the deed to indicate the intended character of the property conveyed, the law looking to the equal relationship and right of other distributees, will presume the character most favorable to equal distribution, to have been intended by the donor."    See also, *Stewart and Wife et al., vs. Pattison's Exc'r et al.*, 8 *Gill*, 55 ; *Mut. Ins. Co., in Baltimore County, vs. Deale*, 18 *Md.*, 45 ; *Cecil vs. Cecil et al.*, 19 *Md.*, 81, and 20 *Md.*, 156 ; *Wilk's Adm'r vs. Greer et al.*, 14 *Alab.*, 437.    It is not necessary to constitute an advancement, that the provision should take place in the parent's lifetime.    A portion secured to the child *in futuro*, or to com-

mence after the father's death, or upon a contingency that has happened, or to arise within a reasonable time, is an advancement. *Edwards vs. Freeman*, 2 *P. Wms.*, 442 ; 2 *Williams on Extrs.*, 1289 ; *Toller on the Law of Extrs.*, 377 ; *Wilk's Adms. vs. Greer et al.*, 14 *Ala.*, 442 ; *Hook vs. Hook*, 13 *B. Mon.*, 527, 528.

The deed of trust in the record, of the 23d of April, 1844, which gave rise to this controversy, is for the nominal consideration of five dollars. The subject matter conveyed in trust, are several parcels of fee simple and leasehold properties, to be held in trust for the grantor John W. Willson, during his natural life, without impeachment of waste, and after his death, in trust for the use and benefit of his seven children therein named, (all then infants,) who were to receive the clear rents and profits equally, until the youngest of said children should attain the age of twenty-one years; then the portions of the males to be conveyed and assigned to them in fee ; and those of the females to be held in trust for their respective lives, and upon their deaths respectively, in trust, for such persons as would by the laws of Maryland, existing at the execution of the deed, be the heirs of the daughters respectively, to take an estate in fee simple in lands by descent from them, and for the heirs and legal representatives of such person or persons forever ; with a provision, in the event of any of the grantees dying without issue, before the arrival of the youngest at full age, then in trust for the survivors; and in the event of any dying before that time, leaving issue, the child or children of such to take his share, &c. Nothing in this deed indicates the purpose of the grantor to be other than that of making an advancement to the children named in it as *cestuis que trust*. Its character and provisions all support the legal presumption, rather than suggest a different intent. But this, as has been said and the authorities already cited show, can be repelled by evi-

dence properly admissible ; for the introduction of proof
for this purpose does not contravene the general rule of
evidence, excluding parol proof to explain or vary the
terms of a written contract.   The object being collater-
ally to affect the title to other property, evidence can be
gone into to show its true character and design ; other-
wise the law of advancement under our statute would, in
most cases, prove a dead letter, as observed by Dorsey,
Justice, in *Stewart vs. The State,* 2 *H. & G.,* 120.   This
was not controverted in the argument, but the proof
introduced in this case to remove the legal presumption,
and also to support it, consisting of the declarations of
John W. Willson, the grantor, was excepted to, on the
ground that the declarations were not made at the time
of the execution of the deed.   And it was urged that the
rule on this subject, as given in the cases of *Parks vs.
Parks et al.,* 19 *Md.,* 331, and *Cecil vs. Cecil et al.,* 20
*Md.;* 156, is that the intention may be ascertained by
parol evidence of the donor's or grantor's declarations at
the time of the gift or of executing the conveyance, or of
the donee's or grantee's admissions afterwards, or by
proof of facts and circumstances from which the inten-
tion may be inferred.   We think that according to this
rule, even liberally applied, the exceptions on both sides
were well taken, and that the testimony furnished by the
declarations in proof, was of too vague and uncertain a
character to change the legal intendment of the convey-
ance.   But if they could be regarded as admissible, their
tendency would be to strengthen the conclusion that an
advancement was intended ; and there is nothing in the
other facts and circumstances that can authorize us to
adopt a different view.   Regarding it, then, as an ad-
vancement, the next question to be determined is, at what
time is the valuation of the property brought into the
account to be made?   And upon this point we consider it
clear, both upon authority and reason, and upon the

express language of our statutes of Distribution (Code of
Pub. Genl. Laws, Art. 47, sec. 31, and Art. 93, sec. 126,)
that the value of the property should be estimated at the
time it was received—that is, at the time when the *cestuis
que trust* were placed in possession or enjoyment of it—
and this was after the death of John W. Willson, the
grantor.   The clause, *"or the value thereof at the time
such advancement was received,"* found in the 31st sec. of
Art. 47 of the Code of Public General Laws, seems to
have been introduced into our law of Descents of 1820,
ch. 195, sec. 5, for the purpose of removing any doubt or
difficulty on this particular subject ; as that clause is not
in the corresponding provision of the old law of 1786,
(ch. 45, sec. 5.)   The language of our Testamentary law,
regulating the distribution of personal estate, (Code of
Public General Laws, Art. 93, sec. 126,) is a literal
transcript from the Act of 1798, ch. 101, sub. ch. 11, sec.
6, and is not so specific as that in the law of Descents ;
but it is susceptible of the same construction, and the
rule of equality should prevail, in assigning to it the
same meaning and application.   Otherwise there would
be different modes of estimating the value of real and
personal property given by way of advancement, which
should not be the case, unless the language of the
statutes, or the adjudications upon them, distinctly so
directed.   The Alabama statute provides that the value
of property advanced should be fixed "at the time it was
*delivered ;"* and the Supreme Court of that State consid-
ered that language clear and unambiguous, and admitted
of no other construction than that the heirs advanced,
should be chargeable with the value of the property at
the time they come to the actual possession of it.   This
decision was given in a case in which children had been
advanced by a deed for slaves, in which the father
reserved the use of them during his life.   *Wilk's Adm'r
vs. Greer et al.,* 14 *Ala.,* 443.   A similar but much

stronger case arose in Kentucky. In that the father executed a deed of gift to his children of his land and slaves, reserving to himself a life estate in the property conveyed. After his death a question arose between the children advanced, and grandchildren, the children of a deceased son, not provided for. After determining that the property conveyed was an advancement, the Court of Appeals proceeded to the other inquiry, as to the period of valuation. The Kentucky statute provided that "all advancements should be estimated at their value *when made.*" And the Court, in answer to the query, "at what time shall an advancement secured by deed, but to be enjoyed at a future period, be deemed to have *been made or given?*" expressed the opinion, and so decided (sustaining the views of the Court from which the appeal had been taken) that it should be at the time the advancement is *made complete by the actual possession and enjoyment of it;* adding, in the course of well sustained reasoning upon the subject, "that when an advancement is received by some of the children at the death of their father, the value of the property *at the time they receive it* is that which, in justice and equity, they should be chargeable with, in making a distribution of the estate." *Hook vs. Hook,* 13 *B. Mon.,* 528, 529.

The cases relied upon by the appellants as settling a contrary doctrine, and confining the valuation to the date of the deed, we think do not conflict with the construction we have given to the sections of the Maryland Code, regulating the distribution of advancements. The case of *Oyster vs. Oyster,* 1 *Serg. & R.* 422, was one in which the property was delivered at the time of the deed, and applying the rather general and indefinite language (as to time) of the Pennsylvania statute, as construed in practice through a long course of years, in relation to personal property, the Court subjected real estate to the same rule of construction, but that was that the child

advanced accounts for the advance, according to its value *when he received it.* The case of *Toomer vs. Toomer*, 1 *Murphey's (N. C.) Rep.*, 93, is the same as to the fact of the property conveyed, having passed into the possession of the grantee with the deed, and the valuation at the time of the conveyance, was adjudged to be the rule in the case ; but it was the time when the property was actually received. So in the Maryland case of *Warfield vs. Warfield et al.*, 5 *Har. & J.*, 459, which arose under the law of 1786, ch. 45, and was decided by the Chancellor before the Act of 1820 was passed, the real estate brought into hotchpot, passed into the possession of the grantee at the time of the execution of the conveyance, and this Court, as then constituted, determined that the grantee's claim of bringing it into hotchpot at the value of the advancement at the *time he received it,* was correct, and that he should account for it at that valuation. This case was regarded by the Supreme Court of Alabama, in the case of *Wilk's Adm'r vs. Greer et al.*, already referred to, as sustaining the position taken in it. And we see nothing in it to induce a different conclusion from the one we have arrived at and expressed. The decrees appealed from will, therefore, both be affirmed, with costs to the appellees, and the causes remanded.

*Decrees affirmed and*
*causes remanded.*

(Decided 12th November, 1867.)