HEARD NOVEMBER TERM, 1877.

### RICKENBACKER *vs.* ZIMMERMAN.

One of the essential elements of an advancement is, that it must be something taken by the parent out of his own estate and given to the child, or something purchased and paid for by the parent for the child.

Where an intestate purchased and paid for a policy of insurance on his own life in the name of his daughter and for her sole benefit, and paid the annual premiums thereon until his death: *Held,* That such policy, and also the annual payments of premiums after its purchase, were advancements to the daughter.

Where a policy of insurance purchased and paid for by a father in the name of his daughter is charged as an advancement to her, its value must be estimated at the time of the father's death, relation being had to its situation at the time of the gift, that is to say, at the time it was issued. Subsequent annual payments of premiums made by the father *held* to be advancements of so much money to be charged without interest during the father's lifetime.

BEFORE COOKE, J., AT ORANGEBURG, OCTOBER, 1875.

Action by Thomas E. Rickenbacker, administrator of Louis H. Zimmerman, deceased, and Anna A. Zimmerman, against Ida Zimmerman, Ella Zimmerman and Cornelia Zimmerman.

The case will be sufficiently understood from the judgment of the Circuit Court and the opinion of this Court.

The judgment of the Circuit Court is as follows:

"The above entitled cause was heard before me at the October session of the Court of Common Pleas at Orangeburg.

"After hearing the pleadings, testimony and argument of counsel upon the question of law involved, I find the following as matters of fact:

"1. Lewis H. Zimmerman died at his residence, Orangeburg County, on the twelfth day of March, 1874, intestate.

"2. On April 6th, 1874, the plaintiff, Thomas E. Rickenbacker, obtained letters of administration upon the estate of said intestate, and has paid the debts, and has in hand for distribution a surplus of from $4,000 to $4,500 from the personalty, including rents and crops of 1874 and 1875.

"3. That the real estate of the intestate for distribution consists of about six hundred acres of land in Orangeburg County, described in the complaint, and is worth about $2,500.

"4. That the intestate left surviving him, as distributees of his estate, the plaintiff, Ann A. Zimmerman, his widow, and the defendants, Cornelia, aged seven years, his daughter by his first wife, and Ida, aged five years, and Ella, aged three years, his daughters by his second wife, now his widow.

" 5. The intestate in his lifetime, on January 24, 1870, after the death of his first wife, and before his second engagement and marriage, insured his life for the sole benefit of his daughter Cornelia, his only child by his first marriage, in the Equitable Life Assurance Society, (a corporation chartered under the laws of New York,) for the sum of four thousand dollars, payable upon his death; and then and thereafter paid regularly up to the time of his death an annual premium of $99 12-100, on the twenty-fourth day of January in each year, upon the policy for said insurance, making in all five payments, aggregating four hundred and ninety-five 60-100 dollars; and on the decease of the said intestate, the general guardian of the infant Cornelia received from the Equitable Life Assurance Society the sum of four thousand one hundred and eleven 53-100 dollars, the amount of the said policy and its accumulations.

" 6. About the middle of February, 1870, Lewis H. Zimmerman became engaged to, and on October 12, 1870, intermarried with, his second wife, now his widow; and of this marriage the two children, Ida and Ella, were born.

" 7. The laws of New York bearing upon the contract of insurance, and the regulations and policy of the Equitable Life Assurance Society, were in evidence.

" Concerning the foregoing facts there was no dispute. The questions discussed by counsel were whether the said insurance was an advancement by the intestate to his daughter Cornelia, and, if so, the value of such advancement. On these issues I have arrived at the following conclusions of law:

" 1. The policy of insurance purchased by the intestate was a substantial provision for the future support and maintenance of his daughter Cornelia, and is, therefore, an advancement, and to be so considered in the distribution of the estate of the said intestate.

" 2. The value of the said advancement is the sum named in the policy of insurance, four thousand dollars, the excess over that sum paid to the general guardian of Cornelia being the earnings of said policy during her father's lifetime."

It was accordingly so ordered and adjudged.

Defendant, Cornelia Zimmerman, appealed.

*Knowlton*, for appellant:

First. Amounts paid for or realized under a policy of life insurance are not subject to the law regarding advancements. The

appellant's counsel has been unable to find a case where the contrary principle has been invoked.

. Second. There is no evidence showing an advancement—that there was any gift to or payment for the appellant from the paternal estate.—*Ison* vs. *Ison*, 5 Rich. Eq., 18. On the bare case, the finding that the intestate "insured his life for the sole benefit" of the appellant, does not, when connected with the statement in the policy that the premiums were paid and payable by the appellant, raise any presumption that such payments were made by the father *a suis*, but, on the contrary, raises the absolute legal presumption that the money paid was the daughter's.—*Millspaugh* vs. *Putnam*, 16 Abb. Pr., 380 ; *Bogert* vs. *Morse,* 1 N. Y., 377. *Non constat* but that, and presumably, the father did act as the daughter's agent in procuring the policy and making the first payment. And this presumption is not rebutted by the finding that the father made the subsequent payments, for the further presumption is that the original status continued.

And the finding that the father effected the insurance "*for the sole benefit*" of the appellant is not only preclusive of any idea of an advancement, but, under the law of New York, (where the policy was made and whose law must prevail in case of conflict with that of this State, but there is no such conflict,) which holds that the intention of the parent must prevail, (*Jackson* vs. *Malstaf*, 11 Johns., 41 ; *Proseus* vs. *McIntyre*, 5 Barb , 424,) is proof that the father intended no advancement. For the policy could not be for the *sole* benefit of the appellant if the father had intended that his other children should either directly or indirectly profit by it.

Third. The Court below erred in the principle fixing the valuation. At all events the appellant is chargeable with no greater amount than the premiums paid.

1. The property must be accounted for at its value when given.— 1 Wash., (Va.) 224; 17 Mass., 358; 3 Pick., (Mass.) 450 ; 2 DeS., 127 ; 3 Rand., (Va.) 117, 559; 8 Ves., 51 ; 2 Wms. on Exrs., 1354.

The cases of *McCaw* vs. *Blewit*, (2 McC. Ch., 103,) and *Ison* vs. *Ison*, (5 Rich. Eq., 15,) which hold that " in ascertaining the amount of an advancement reference should be had to the. *description* of the chattel at the time of the gift and the *value* of a chattel of that description at the death of the intestate," are not in conflict with this proposition. The rule established by them is in aid of those who have been advanced, and declares (*McCaw* vs. *Blewit)*

that "the increased value of the property given which arises from improvement is expressly excluded by our Act, which constitutes an important difference between it and the statute of Charles."

2. The principle of the law of advancements goes no further than that one child shall have no more than another of the paternal estate. It has no application against the profits of a pecuniary investment in a child's favor.

*Izlar & Dibble,* contra :

A policy of insurance on the life of a father, purchased and paid for by him out of his estate, for the benefit of an infant daughter, is an advancement.

1. It is a substantial provision for the future support and maintenance of the child.—*McCaw* vs. *Blewit,* 2 McC. Ch., 102, 103 ; *Ison* vs. *Ison,* 5 Rich. Eq., 19.

2. "An advancement is a provision made by a parent to his child, of money or property, the entire interest in which passes out of the former in his lifetime, though it is not necessary in all cases it should take effect in possession before his death."—*Grey* vs. *Grey,* 22 Ala., 233, cited in 14 U. S. Ann. Dig., 15.

Policies in favor of minor children are neither purchasable nor assignable.—Regulations Eq. Life Assurance Society.

3. "It is not necessary, to constitute an advancement, that the provision should take place in the parent's lifetime. A portion secured to the child *in futuro,* or to commence after the father's death or upon a contingency that has happened or to arise within a reasonable time, is an advancement."—*Clark* vs. *Wilson,* 27 Md., 700, 701 ; *Edwards* vs. *Freeman,* 2 P. Wms., 436, 449 ; *Lord Kircudbright* vs. *Lady Kircudbright,* 8 Ves., 63 ; *Grey* vs. *Grey,* 22 Ala., 233.

The value of the advancement is the sum of $4,000, payable by the terms of the policy to the child on the death of the parent, and actually received by her guardian.

1. The Statute of Distributions of 1791 provides that the value shall be estimated "at the death of the ancestor."—Gen. Stat., Chap. LXXXV, § 7, p. 440; 5 Stat., 163.

This is more explicit than the statute of Charles II, which did not fix the time of valuation.—2 Stat., 524; *Thomas* vs. *Gage,* Harp. Eq., 200.

2. "The value of an advancement should be estimated as of the time when the donee is put in actual possession and enjoyment of it. A conveyance of property to take effect at the death of the grantor is an advancement."—*Hook* vs. *Hook*, 13 B. Mon., 526, cited in 15 U. S. Ann. Dig., 13; also cited in *Clark* vs. *Willson*, 27 Md., 704.

This is very strong, for the Kentucky statute provided that "all advancements should be estimated at their value *when made;*" and in this case a father executed a deed of gift to children, reserving to himself a life estate, and the value was estimated at the death of the donor.—See also *Wilks, Adm'r*, vs. *Green*, 14 Ala., 443; *Clark* vs. *Willson*, 27 Md., 702–705; Miller's Appeal, 31 Penn., 338.

In the present case, while his infant daughter was under the age of two years, the father insured his life for her sole benefit and paid the premiums regularly till his death.

This the law presumes to be an advancement.—2 Fonbl. Eq., 121; *Sampson* vs. *Sampson*, 4 S. & R., 333; *Douglass* vs. *Brice*, 4 Rich. Eq., 323–326; 2 Story Eq. Jur., § 1202–1204; *Creed* vs. *Lancaster Bank*, 1 Ohio State R., 10.

1. The intention of the donor may be ascertained by parol evidence and proof of facts and circumstances. In the absence of such evidence the presumption of law is favorable to equal distribution being intended.—*Parks* vs. *Parks*, 19 Md., 323, cited from Md. Dig., 6; *Speer* vs. *Speer*, 1 McCart. Ch., (N. J.,) 240; *Dilman* vs. *Cox*, 23 Ind., 440; *Autrey* vs. *Autrey, Adm'r*, 37 Ala., (N. S.,) 614; *Sandford* vs. *Sandford*, 5 Lans., (N. Y.,) 493; *Wilson* vs. *Beauchamp*, 44 Miss., 556.

July 1, 1878.　The opinion of the Court was delivered by

McIVER, A. J.　On the 24th January, 1870, the intestate insured his life for the sole benefit of his daughter Cornelia, and, having subsequently married a second time, died intestate on the 12th March, 1874, leaving as his heirs-at-law and distributees, his widow and two children of his last marriage, Ida and Ella, together with the appellant Cornelia. Under proceedings for partition and settlement of his estate two questions arose: 1. Whether such insurance was an advancement to the appellant. 2. If so, how should such advancement be valued. The Circuit Judge held that the insurance was an advancement, and that the value of the advancement was the sum named in the policy and received by the guardian of appellant. From this decision the appeal is taken.

In the absence of any direct authority upon these points, these questions must be determined upon the general principles regulating the law in respect to advancements, aided by such analogies as may be afforded by the decided cases.

In 1 Bouv. Law Dic., 76, the term advancement is defined to be "that which is given by a father to his child or presumptive heir by anticipation of what he might inherit." In *McCaw* vs. *Blewit*, (2 McC. Ch., 91,) the leading case on the subject of advancements in this State, no definition of the term is given in the decision of the Court of Appeals, but in the circuit decree it is defined to be "such a part of a man's estate as he gives to a child on marriage, or on setting out in life, which may be necessary for its settling in the world."

In the argument of this case the counsel for the appellant, who afterwards became one of the most eminent Chancellors of this State, questions the correctness of this definition, and says: "If a definition may be ventured, an advancement is the gift of a parent to a child beyond what by law he is bound to provide, from which a substantial benefit is to be derived by the child."

But, after long experience on the bench, this distinguished Judge seems to have reached the conclusion that it was not an easy matter to frame an accurate definition of the term.—*Murrell* vs. *Murrell*, 2 Strob. Eq., 151. While, however, it is a difficult matter to frame such a definition as will cover every possible case, there are certain essential elements which every advancement must possess, one of which is that it must once have been a part of the ancestor's estate, which, upon his death, would descend to his heirs but for the fact that it has, by the act of the ancestor in making the gift, been separated from or taken out of his estate, or it must be something which is purchased with the funds of the father in the name and for the benefit of the child.

This is obvious from the very terms of our Act of 1791, (corresponding with the terms of Section 7, Chapter LXXXV, General Stat., p. 440,) as construed by the case of *McCaw* vs. *Blewit, supra;* and, as Johnston, Ch., says in *Ison* vs. *Ison*, (5 Rich. Eq., 19,) " an advancement always embraces the idea that the parent has parted from his title in the subject advanced." Even the case of *Clark* vs. *Wilson*, (27 Md., 693,) which is much relied on by the respondents, recognizes this idea, for in that case it is said : "An advancement is a giving by anticipation the whole or a part of what it is

supposed a child will. be entitled to on the death of the party making it and intestate," evidently implying that it must be a part of the ancestor's estate of which the child would be entitled to inherit a part in case of intestacy. So, too, in *Miller's* appeal, (31 Penn., 338,) an advancement is said to be "a pure and irrevocable gift by a parent, in his lifetime, to his child, on account of such child's share of the estate after the parent's decease." And in *Dilman* vs. *Cox*, (23 Ind., 442,) it is said : "The true notion of an advancement is a giving by anticipation the whole or a part of what it is supposed a child will be entitled to on the death of the parent or party making the advancement."

If, then, one of the distinguishing features of an advancement is that it must once have been a part of the ancestor's estate, which, but for the gift by way of advancement, would descend to his heirs, the next question to be considered is whether this policy of insurance or the money secured by it ever constituted any portion of the intestate's estate. The finding of fact by the Circuit Judge is that " the intestate in his lifetime  *  *  *  *  insured his life for the sole benefit of his daughter, Cornelia,  *  *  *  *  for the sum of four thousand dollars, payable upon his death, and then and thereafter paid regularly up to the time of his death an annual premium of ninety-nine 12-100 dollars," &c.

The policy recites that the first premium was paid by the said Cornelia, and upon what evidence, if any, the Circuit Judge based his finding contradictory of this recital does not appear. Assuming, however, as we must do, the correctness of the finding of the Circuit Judge, inasmuch as in the case agreed upon he says, after stating the facts as found by him, that " concerning the foregoing facts there was no dispute," the inquiry is whether this policy or the money secured by it ever constituted any part of the intestate's estate which, in any event, could have descended to and become distributable amongst his heirs and distributees, or which he could, by his will, have given to one or more of them. The authorities leave us in no doubt upon this point.

In Bliss on Life Insurance, (§ 317,) it is said the rule is "that a policy and the money to become due under it belong, *the moment it is issued*, to the person or persons named in it as the beneficiary or beneficiaries, and that there is no power in the person procuring the insurance, by any act of his or hers, by deed or by will, to transfer to any other person the interest of the person named." Again,

at Section 328, the writer says: "Payment of the premium without any contract with the person entitled to the benefit of the policy gives no title to it." And, again, at Section 339, it is said: "Where the policy designates a person to whom the insurance money is to be paid, the person who procures the insurance and who continues to pay the premiums has no authority, by will or deed, to change the designation or title to the money. He is under no obligation to continue to pay the premiums unless he has covenanted so to do; but if he does so, the person originally designated in the policy will derive the benefit."

To the same effect, see May on Insurance, p. 447, § 392.

The cases which were principally relied upon by the respondents do not, in our opinion, conflict with these views. The case of *Edwards* vs. *Freeman*, (2 P. Wms., 435,) was this: Richard Freeman, in contemplation of marriage with his first wife, Elizabeth, by articles, covenanted with the father of Elizabeth, in consideration of the marriage and of a marriage portion of £5,000, to settle certain lands to the use of himself for life, remainder to said Elizabeth, remainder to his first and other sons in tail male successively, remainder to trustees for five hundred years to raise portions for the daughters of the marriage, payable at eighteen or marriage, and to raise maintenance for such daughters, until their portions became payable, of £80 per annum. The marriage having been consummated and the only issue being one daughter, and Elizabeth dying, Richard Freeman married again and died intestate, leaving a widow and two children of the last marriage and the daughter of the first marriage. The question was whether the provision for the daughter of the first marriage could be regarded as an advancement: *Held*, That the £5,000 portion was an advancement, but not the annual provision for maintenance. The difference between that case and the one now before the Court is, that there the gift was of a portion of the intestate's estate, while here the sum of money secured by the policy never did constitute any part of the intestate's estate. For, as the Master of the Rolls says in that case, "the present case comes nearer to land than if it had been a charge out of land; for the trust of the five hundred years' term being only to raise this £5,000 portion, and the plaintiff, Mary Edwards, being the person who is alone entitled to it, she, as to this purpose, is, in effect, the owner of the five hundred years' term."

It was, therefore, practically a gift to the daughter of a lease for five hundred years of the lands specified; that is, it was a gift of a portion of the intestate's estate. *Kircudbright* vs. *Kircudbright* (8 Ves., 51,) was a case in which a father gave a bond to his son to secure the payment of a certain annuity until his son should be in possession of a living of a certain annual value, and by an agreement of the same date the son covenanted that he would forthwith enter into holy orders and accept such living. The father paid the annuity regularly for nine years, but the son failed to take orders and qualify himself for a living, and upon the death of the father intestate the question arose whether this annuity could be regarded as an advancement, and, if so, at what value it should be charged.

Lord Eldon, after expressing some doubt as to the legality of the transaction as being contrary to public policy, decided that, the son having failed to comply with the condition for nine years, the annuity was determinable by the father or his representatives, and that, while it should be regarded as an advancement, it was a very doubtful question as to how it should be valued, and, finally, gave the son the option to have it valued at the date of the grant or to estimate its value by the amount of the payments made under it. Besides, the fact that the very doubtful terms in which this decision was made deprives this case of much of the weight which it would otherwise possess; it may be remarked that here, too, the advancement was, practically, of a portion of the intestate's estate—the annuity being a charge upon that estate. It was also held in this case that a commission in the army, which the father had purchased for another son, was an advancement, to be valued at the sum paid for it, of which we will speak hereafter.

If, then, this policy of insurance never constituted any part of the estate of the intestate, the next inquiry is, was it something purchased for the child with the funds of the father, and, if so, how and when is its value to be estimated. Assuming that the finding of fact by the Circuit Judge is correct, then it follows that this policy of insurance does possess this distinguishing feature of an advancement, viz., that it was a thing purchased with the funds of the father in the name and for the benefit of the child. The thing purchased being the policy of insurance, and the purchase having been made and the gift completed the moment it was issued, as we have seen above, that is as soon as the first premium was paid, the only remaining inquiry is how and when is its value to be

ascertained. Our Act of 1791, differing in this respect from the statute of 22 and 23 Charles II, fixes this beyond dispute by declaring that such value shall be "estimated at the death of the ancestor, but so as that neither the improvement of the real estate by such child or children nor the increase of the personal property shall be taken into the computation," or, as it is stated in the leading case of *McCaw* vs. *Blewit, supra,* in order to ascertain the amount at which an advancement is to be charged, it "is to be estimated at what it is worth at the time of the death, relation being had to its situation at the time of the gift." The advancement or thing given being the policy of insurance, and the time of the gift being the moment it was issued, to ascertain its value, according to the rule established by our statute as construed by our Courts, the inquiry is, not what it cost, as was held in *Kircudbright* vs. *Kircudbright,* under the English statute, in reference to the commission in the army, because that is not in accordance with the rule as established by our statute, for, as is said by Johnston, Ch., in *Cooner* vs. *May,* (3 Strob. Eq., 189,) "it is not the sum expended, but the thing which is bought with it—the thing received by the child— which constitutes the advancement; nor is the cost of the purchase the measure of the value of the thing advanced;" but the inquiry is, what a policy for a like amount, upon which the first premium had been paid, on the life of a person, with like expectation of life and of the same age as the father of appellant was when this policy was issued, be worth on the 12th March, 1874, the date of intestate's death?

It is true that it is stated that by one of the regulations of the company issuing this policy a policy drawn in favor of a minor child, as this was, is "neither purchasable nor assignable." But without stopping to inquire whether such a regulation, not incorporated in or forming a part of the policy, which is the contract between the parties, could abridge the rights of the holder of the policy, it is sufficient to say that the inquiry should be what would *such* a policy be worth at the date of the death of the intestate in the condition in which this one was at the time when it was issued, that being the time when the gift was made. If, however, from any cause, it should appear to be of no value, then the result would be that it was no advancement.

The question as to the payment by the father of the premiums subsequent to the first presents more difficulty; but we are inclined

to regard them as advancements of so much money: like the case of a father who, after having given his child a piece of property— a residence, for example,—expends considerable sums of money from year to year in making improvements or additions to the buildings. In such a case, the thing given is the money expended; and while it is true that ordinarily the sum expended does not furnish the rule for estimating the value of an advancement, yet where, as in this case, the thing given is money, there is no other mode of estimating its value except by the amount given.

The suggestion in the argument of respondents that the premiums paid might exceed the amount received on the policy, or that the whole might be lost by the failure of the insurance company, loses all its force in view of the decisions holding that the child is chargeable with the value of the advancement even though the thing constituting the advancement had ceased to be property before the settlement is made, as in cases of advancements in slaves.—*Manning*, 12 Rich. Eq., 410; *McLure* vs. *Steele*, 14 Rich. Eq., 115.

So that we think the advancement in this case was, first, the policy of insurance, the value of which is to be ascertained in the manner above indicated, that being the thing which was purchased with the first premium, and that all subsequent premiums were advancements of so much money, which, of course, will bear no interest except from the time of the death of the intestate.

The authorities relied upon to show that the true value of the advancement in this case was the amount of money received by the child do not, in our opinion, sustain such a position, inasmuch as these cases are from States where the Statutes of Distributions are not like ours, and the decisions were made to turn upon the phraseology of the respective statutes.

In *Clark* vs. *Wilson*, (27 Md., 693,) a father made a deed of trust of certain lands for the benefit of his children of the first marriage, reserving a life estate to himself. The questions were, first, whether the property conveyed by the deed of trust was an advancement, and, second, if so, whether it should be valued at the date of the deed or at the date of the father's death. It was held that the property was an advancement and that it should be valued at the date of the father's death, when the life estate fell in and the remainder took effect, or when the children received possession of the property.

The case turned upon the language of the Maryland statutes: "The value thereof at the time such advancement was received "—the Court construing those words to mean when the property actually goes into the possession of the child.

The case of *Wilkes* vs. *Green* (14 Ala., 443,) was this: A father made a deed of slaves to his children, reserving a life estate to himself, and the same questions arose. The Court, basing its decision upon the language of the Alabama statute, which provides that the value of the property constituting the advancement shall be fixed "at the time it was delivered," held that the children were chargeable with the value of the property at the time they came to the actual possession of it.

In *Hook* vs. *Hook*, (13 B. Monroe, 528,) a father conveyed to certain of his children certain lands and slaves, reserving a life estate to himself. The Kentucky statute provided that "all advancements should be estimated at their value when made," and the Court held that the advancement should be deemed to have been made at the time the advancement is "made complete by the actual possession and enjoyment of it." These cases, besides resting upon the particular phraseology of the several statutes of the several States in which they were decided, differ materially from the one now before the Court. In each of them the property constituting the advancement was a part of the father's estate *and continued in his use and enjoyment and under his control up to the time of his death*, while in the case now under consideration the policy of insurance was never a part of the father's estate and was never in his own use or under his control. The case of *Meadors* vs. *Meadors* (11 Iredell, 148,) is likewise relied upon. That case, however, turned upon the special provisions of the North Carolina statute and throws no light upon the questions we are considering. Many of the cases from other States cited in the argument hold that the question of advancement is one of intention, but such does not seem to be the rule in this State.

In *Rees* vs. *Rees*, (11 Rich. Eq., 86,) it was held that whether property given by a parent to a child shall be considered as an advancement is not a question of intention. It is very true that what is or is not an advancement may depend upon the circumstances or condition of the parties, as in *McCaw* vs. *Blewit*, 2 McC. Ch., 91; *Murrell* vs. *Murrell*, 2 Strob. Eq., 148, and *Ison* vs. *Ison*, 5 Rich. Eq., 15; "but the mere declarations of the donor cannot alter the

operation of the law either as to the character of the gift or even the mode of valuation."

The judgment of the Circuit Court, is so far as it conflicts with the principles herein announced, is set aside and the cause remanded for further proceedings in accordance with the principles herein established.

*Willard*, C. J., and *Haskell*, A. J., concurred.

---

HEARD NOVEMBER TERM, 1877.