John T. Stewart and wife, and others, *vs.* Jeremiah L. Pattison, Exc'r of James Pattison, and others.— *June*, 1849.

By the act of 1798, ch. 101, sub. ch. 11, sec. 6, money given to a child without a view to a portion or settlement, shall not be deemed advancement.

In proceedings in the orphans courts, exceptions to testimony deemed to be inadmissible, are not required.

He who claims to be a creditor, must take care to procure legal evidence of the contract which makes him such, for the law will not help him by any of its presumptions. If a man claims to have lent money to another, something more is necessary than proof of the delivery of the money, for this *prima facie* is only proof of payment.

If money is delivered by a parent to a child, it will be presumed to be an advancement or gift.

A child who has received any advancement from his father, in his life time, is bound to bring such advance into *hotch-pot* only in case of actual or total intestacy.

A testator gave legacies to several of his children, adding thereto the words,

"*and no more of my estate.*" HELD : that these words cannot have the effect to exclude such children from participating in the undisposed of residue of the estate ; neither can they give such residue *by implication* to the other children, to whose legacies no such restriction was annexed.

A man must dispose of his property in his will, by saying expressly, or by necessary implication, to whom it shall go ; not by declaring to whom it shall *not go.* The law will not sanction a disposition in this latter mode.

The law does not conclude, that because a man has determined to disinherit one child, he means that all the rest of his children should be his residuary legatees. The act of disinheriting a child, is one which the law cannot regard very favorably.

The words " no more of my estate." may be rejected as surplussage. They evidence an intent ; but a mere intention will not exclude the children to whose legacies they are annexed, from their shares of the residuum of the estate.

The orphans court excluded a child from any share of the residue of the personal estate in the hands of the executor, because they were of opinion that a conveyance of a tract of land to him, by the testator, was an advancement, and greater in value than a share. HELD :

That this was error. With the real estate of the deceased, when and how he has disposed of it to his children, the orphans court has no concern. In a different form, and in a different *forum*, controversies in regard to the real estate, must be settled.

A testator gave, by his will, to two of his daughters, $1,500 each, to be paid them by their brother, to whom he devised, by the same will, certain real estate, which he afterwards conveyed to such brother by deed. HELD : that these daughters were not entitled to have this sum paid them out of the residue of the personal estate, if payable at all, it must be claimed of the devisee, who, by the will, is required to pay it.

Appeals from the orphans court of *Dorchester* county.

The several appeals in this case were taken from an order of said orphans court, distributing the personal estate of *James Pattison,* late of said county, deceased, who died in the month of September, 1844, leaving a last will and testament executed on the 9th of November, 1836, upon the construction of which, most of the questions involved in the case arose.

The testator, after directing his debts to be paid, devised and bequeathed as follows : "*Item 2nd.* I give unto my son, *Jeremiah L. Pattison,* all the lands I hold, lying and being in the county aforesaid, on *Slaughter* creek, called "*Elysian Fields,*" or by any other name they may be called, to him and his heirs

forever, provided the said *Jeremiah* should pay, or cause to be paid unto his sisters, *Ann Elizabeth,* and *Margaret W. Pattison,* the sum of $3,000, say to each $1,500, to be paid in manner as follows: one fourth in six months after my decease, and one other fourth in twelve months, &c., the balance, being $1,500, to be paid in two years from my decease, if demanded, with interest on the whole till paid, and I give unto my son, *Jeremiah,* no more of my estate. *Item 3rd.* I give unto my son, *William H. Pattison,* the farm I now live on, with all the improvements thereon, also all other lands that I have given away to him and his heirs forever, provided he, the said *William H.,* should pay over unto his sisters, namely, *Emily W. Pattison, Henrietta J. Pattison, Sarah Caroline Pattison,* and *Martha Gara Pattison,* the sum of $2,000, to each $500, to be paid in four equal instalments, annually, clear of interest. I also give unto my son, *William H. Pattison,* a negro boy called *Peter Slater,* and no more of my estate, *Item 4th.* I give unto my daughter, *Sarah Caroline,* my large brick house, in the town of *Cambridge,* with all the lot, &c., annexed thereto, except the store house and doctor's shop, as now enclosed, which I give unto my youngest daughter, *Martha Gara Pattison,* to each of them and their heirs forever. *Item 5th.* I give unto my daughter, *Mary Ann,* who intermarried with *James Bryan,* $1, and no more of my estate. *Item 6th.* I give unto my daughters, *Ann E. Pattison* and *Margaret W. Pattison,* $500 to each, to be paid out of my estate, in addition to the amount their brother, *Jeremiah,* will have to pay them, and no more of my estate. It is further my will and desire, that all my daughters, as long as they remain single or unmarried, should have room or privilege in either of the mansion houses mentioned to *Jeremiah* and *William Pattison,* also privileges of yard, kitchen, &c., without molestation or hindrance. *Item 7th.* I do hereby constitute and appoint my two sons, viz: *Jeremiah* and *William H. Pattison,* my whole and sole executors of this my last will and testament. In witness whereof," &c.

On the 22nd of May, 1838, after the execution of the above

will, the testator executed a deed conveying to his son, *Jeremiah*, the same tract of land which he had devised to him by his will. This deed recites, "that in consideration of the natural love and affection which he, the said *James Pattison*, hath and beareth unto the said *Jeremiah L. Pattison*, his son, as also for the better support, maintenance, livelihood and preferment of him, the said *Jeremiah L. Pattison*, and also in consideration of the sum of $20," &c., "the said *James Pattison* hath given, granted," &c., "unto the said *Jeremiah L. Pattison*, his heirs and assigns forever, from and after the natural life of him, the said *James Pattison*, all and singular," &c., "that tract," &c., "of land lying," &c., "called and known by the name of '*Elysian Fields*,'" &c., "containing nine hundred and ninety-four and one-half acres, more or less," "and the rents, issues and profits of all and singular the said land and premises, with their appurtenances, from and after the natural life of him, the said *James Pattison*." "To have and to hold the same," &c., "from and after the natural life of him, the said *James Pattison*, his heirs and assigns, to the only proper use and behoof of him, the said *Jeremiah L. Pattison*, his heirs and assigns forever, from and after the natural life of him, the said *James Pattison*, as aforesaid."

The testator left all the children, mentioned in his will, surviving him, except "*Martha*," who died a minor, intestate, and without issue, before the death of her father, and also a widow, *Sarah Pattison*, to whom the testator was married after the execution of his will, but by whom he had no children. The above children were the sole next of kin and heirs at law of the testator, and of them, *Jeremiah L., Ann*, and *Margaret*, now the wife of *James Fooks*, were children of the testator, by his first wife, and *William Henry, Henrietta*, now the wife of *John T. Stewart, Mary Ann*, wife of *James Bryan, Emily*, wife of *William Birkly, Caroline* and *Martha*, his children by a second wife.

The executors named in the will, took upon themselves the execution of their trust, but before completing the same, one of them, *William Henry*, died intestate, and without issue,

7      v. 8

leaving the said *Jeremiah* surviving executor, who proceeded to settle up the estate, and there remaining a surplus in his hands amounting to $24,500, on the 15th of December, 1846, he filed a petition in the orphans court for a general and detailed order, directing him in what way, and to whom he should distribute said surplus.

This petition very fully and clearly sets forth the controverted questions among the parties claiming said surplus. It states that *Jeremiah*, upon the execution of the aforesaid conveyance, gave his said father his obligation for $3,000, which amount was all he ever paid for said property so conveyed to him; that this property, at the time of the conveyance, was worth about $20,000. That said *Ann Pattison* and *Margaret Fooks* maintain that they are entitled, since said conveyance, to have the sum of $1,500 (which, by the will, was to be paid to each of them by said *Jeremiah*,) paid them out of the personal estate, as legacies, at least, by implication. That the other children resist the right of said *Ann* and *Margaret* so to be considered as legatees. It further states, that *John T. Stewart*, the husband of said *Henrietta*, received from the testator, in his life time, the sum of $2,000, for which the testator took no obligation; that *Stewart* admits that the testator gave him this sum, but insists that it was an absolute and unqualified gift to him, and that the same was neither understood between him and the testator to be a debt, or in the nature of an advancement, and he, therefore, refuses to account for it as a debt, and denies that it ought to be considered as an advancement, or in any manner to affect his claim, in right of his wife, to his full share of said surplus. The other children insist that it is to be considered as an advancement, and in the distribution of this surplus, *Stewart* is not to receive so much on account thereof. That the widow of the testator insists, that this $2,000 shall be collected as a debt, and brought into the estate for distribution, one third of which she claims as her reasonable part. *Stewart* and the other children resist this claim of the widow. It is also insisted, by the other children, that the said conveyance to *Jeremiah* was an advancement, which excludes him from any por-

tion of the personal or real estate of the testator, whilst he maintains that said conveyance does not affect his rights in any distribution of the personal estate of his father. *Stewart* and wife contend, that this surplus is not disposed of by the will, and that they are entitled to an equal share thereof, and even should the said $2,000 be considered an advancement, inasmuch as it is not equal or superior to a share; in the language of the act of 1798, ch. 101, sub. ch. 11, sec. 6, they are not to be excluded from a full participation in said surplus. Whilst the other children maintain, that if said $2,000 be less than a share, that then *Stewart* and wife shall only receive such a sum as, with the said $2,000, shall make them equal with the other children, and that the same principle shall apply to said *Jeremiah*, in relation to his advancement under said deed *Stewart* and wife, *Birkley* and wife, and *Caroline Pattison* contend, they, together with the said *Martha G. Pattison*, are entitled to the whole of this surplus, as legatees by implication, because the said will provides and declares, that the said *Jeremiah L., William H.*, and *Ann Pattison*, and *Margaret Fooks*, and *Mary Ann Bryan*, should have *no more* of the estate of the testator than what was expressly given to them by said will, which contains no such provision as to the said *Henrietta, Emily, Martha* and *Caroline*, and that it was the intention and design of the testator, by such language and distribution, to give said residue to them, they maintaining that said testator having executed his last will and testament, by which he appointed executors to settle his estate, died intestate, if no part of his personal estate but that, that they are the legatees entitled to receive the same, to the exclusion of the other children, or that said surplus was vested in the executors in trust, to be paid over to them as the persons entitled by said will, and by operation of law, whilst those children who would, by this construction, be excluded from participation in said estate, maintained, that this surplus should be distributed as if the said *Pattison* had died intestate, and in the distribution an account of the said advancements shall be taken.

*Stewart,* in his answer to this petition, in reference to the

$2,000, states, that at the urgent and frequently expressed desire of the testator, that defendant and his family should reside near the testator, and his repeated promises that he would give defendant between $2,000 and 3,000, for the purpose of purchasing a farm in his neighborhood, which he spoke of, defendant was induced, and did, in the year 1843, purchase a farm near *Cambridge*, and afterwards called upon the testator for the promised assistance, who very promptly gave respondent the sum of $2,000, which was given and received as a gift. That the testator at no time ever called on respondent for any obligation for the same, and that he frequently told respondent that no charge whatever could be made against him, on account thereof, by testator's representatives; that it was a gift, and defendant should not be uneasy about it, as he never could be called on to account therefor.

A large number of depositions were then taken, in relation, chiefly, to the sum of $2,000 given to *Stewart* by the testator. The character and effect of the proof contained in these depositions are sufficiently stated in the opinion of this court, delivered by his honor, *Judge Magruder*.

Upon this petition, answers and proofs, the said orphans court, on the 8th of March, 1847, ordered and decreed that the said executor pay to *Sarah Pattison*, the widow of the testator, the sum of $8,166.66⅔, it being the one third part of $24,500, the amount in his hands after payment of the debts, and expenses, and all liabilities of the said estate. That he then pay to *Mary Ann Bryan*, wife of *James Bryan*, $1, the legacy left her by the will of the testator; that he also pay to *Margaret*, wife of *James Fooks*, and to *Ann Pattison*, each the sum of $500, the amount of legacies left them by said will; that to the balance thus left in the hands of said executor, to wit: the sum of $15,322.34, there be added the sum of $2,000, the amount received by *John T. Stewart*, making the sum of $17,332.34, and that this sum be divided into seven equal shares, and distributed as follows, to wit: to *Mary Ann*, wife of *James Bryan*, to *Emily*, wife of *William Birkley*, to *Margaret*, wife of *James Fooks*, to *Jeremiah L. Pattison*, as ad-

ministrator of *William H. Pattison*, to *Ann Pattison*, to *Caroline*, and to *Henrietta*, the wife of *John T. Stewart*, each the sum of $2,476.04. The court being of opinion that the said sum of $2,000, in the hands of *John T. Stewart*, was an advancement by the testator to him and his wife, by way of settlement or portion, they further adjudged and decreed that the same be considered as so much paid as his wife's distributive share, and that they receive from the executor the difference between the said sum of $2,000 and the sum of $2,476.04, to wit: the sum of $476.04, and no more, in full of the said distributive share. They further adjudged and decreed that *Jeremiah L. Pattison* be excluded from any share of the said estate, they being of opinion that the conveyance to him by the testator, in his life time, of the "*Slaughter* creek" farm, was an advancement to him, and being greater in value than a share, he is thereby excluded from any portion of the said personal estate. The court were further of opinion, and accordingly so adjudged and decreed, that the above named parties being the heirs and legal representatives of the said testator, are equally entitled to their shares of all the undisposed of personal property, there being nothing, in their judgment, in the will of said testator, to justify a different construction, or to authorise them to direct a distribution thereof to any one or more, to the exclusion of the others. The court were further of opinion, and so accordingly adjudged and decreed, that *Margaret*, wife of *James Fooks*, and *Ann Pattison*, are not entitled to claim the sum of $1,500 each, or any part thereof, out of the personal estate of the testator, the bequest thereof, in said will, being, in the judgment of said court, entirely revoked by the subsequent conveyance of the said land to *Jeremiah L. Pattison*. The costs of the proceedings were adjudged and ordered to be paid out of the estate.

*Stewart* and wife appealed from so much of this order as determined the $2,000, in his hands, to be an advancement.

*Stewart* and wife, *Birkley* and wife, and *Caroline Pattison* appealed from the part of the order which decides that they are

not entitled to the whole estate, and which makes distribution to all the heirs of said testator.

*Jeremiah L. Pattison* appealed from so much of the said order as decides that he is excluded, by reason of said conveyance, from any distributive share of said estate.

*Fooks* and wife, and *Ann Pattison,* from so much of the order as decides that they are not entitled to the sum of $1,500 each, as a legacy from said estate.

The cause was argued before DORSEY, C. J., SPENCE, MAGRUDER, MARTIN, and FRICK, J.

By JAMES A. STEWART, for *John T. Stewart* and wife, appellants, and

By LE COMPTE and HOOPER, for the widow and executor, appellees, and also for the other parties, appellants.

MAGRUDER, J., delivered the opinion of this court.

In the distribution, by the orphans court of *Dorchester* county, of the personal estate of the late *James Pattison*, various questions arose, and the decision of them by the court, gave rise to these several appeals. Of them it is now designed to dispose.

There is proof in the case, that the deceased, sometime before his death, furnished his son-in-law *(Stewart,)* with $2,000. Was this a loan? Or, was it an advancement? Or, was it money given without a view to a portion or settlement? If the latter, the act of 1798, ch. 101, sub. ch. 11, sec. 6, says it shall not be deemed advancement.

There is much testimony in the case relative to this money. It is deemed unnecessary to examine it with a view to show how much of it is admissible, and the weight to which each portion of it is entitled, whether taken by itself, or in connection with the residue of the testimony. This being a proceeding in the orphans court, exceptions to the testimony deemed to be inadmissible, are not required. A judge must have a wonderful degree of confidence in his own judgment, and in

his skill, in arriving at the truth, if, of the correctness of the conclusion to which he is brought by the examination of this testimony, he could feel quite sure. Can we pronounce this to have been a loan of so much money by *Pattison* to *Stewart?* We think not. *Stewart* himself denies it, and a number of witnesses say that they have heard *Pattison* declare that he had given the money to his son-in-law. Others, to be sure, say that he spoke of it to them as a loan. But these latter declarations, when admissible, are not entitled to all the weight which is due to declarations by him, that it was a gift. Some of the witnesses say he stated that he let him have $2,000— a very equivocal phraze—the meaning of the person who uses it is very often mistaken by those who hear it. If *Pattison* intended to lend this money, he could not have been the prudent man that his neighbours and acquaintances always thought him to be. If it was intended as a gift, neither of the parties wanted any proof thereof. If it was a loan, how could it happen that the deceased did not (actually would not,) furnish himself with any proof of it? He who claims to be a creditor, must take care to furnish himself with legal evidence of the contract which makes him such. The law will not help him by any of its presumptions. The authorities tell us, that if a man claims to have lent money to another, something more is necessary than to prove that the plaintiff delivered money to the defendant, and that this *prima facie* is only proof of payment; and in *Heck vs. Keates, 4 B. & C.,* 71, it was said, that if money is delivered by a parent to a child, it will be presumed to be an advancement or gift.

This evidently was not a transaction between a money lender, seeking a profitable investment of his money, and one anxious to borrow. There is satisfactory proof that *Stewart* was to be furnished with this money, not to be expended as he pleased, but because his father-in-law felt an abiding conviction that if he furnished this money, one object which he anxiously desired to accomplish, the society, perhaps the tender cares and attention of a favorite daughter, in his declining years, would be accomplished. Who can examine this testimony and say, that

this money could have been obtained by *Stewart*, even although he had promised to pay legal interest for it, provided it was not designed to assist him in purchasing the farm, which seemed to derive very much of its value from the circumstances that it was very near that of *Pattison*, and moreover, if purchased, was to be the future home of his own daughter? Who ever heard of a money lender so little disposed, nay, so unwilling to have his debt secured, or, indeed, evidence of his debt? To be sure it would appear, from some of the witnesses, that he supposed that it was yet in his power, if he chose, to make of this advance a loan, and was sometimes more disposed than at others, so to consider it; but although he could, with great ease, have obtained evidence of the loan, if he intended that it should be a loan, yet he never could prevail upon himself to ask, or consent to receive a bond, or other evidence of a debt, and never, until his death, is the money demanded as so much lent to the son-in-law. Such a claim, set up at so late a period, not by the party himself, but by those who had not his knowledge of the transaction, if sustained at all, must be sustained by stringent proof. Where is it? Or, what proof is there that the supposed borrower received the money as so much money *lent* to him?

It would be difficult, too, to infer, from the proof, that this was intended as an advancement, that this is to be regarded as money given to a child, with a view to a portion or settlement. This inquiry, however, would only be necessary if there had been an actual or total intestacy. But see the authorities collected in *4th Dessassure* 291, 3 *Ba. Abt.*, *title Executors and Administrators* (edition in 1813,) *Letter K.*, *p.* 77, and also *Deputy Commissary's Guide*, *p.* 117.

To several of his children the testator gave legacies, adding thereto the words, "and no more of my estate." Are those children to be excluded from a share of the fund now to be distributed? We think not. Any portion of his personal estate of which the testator himself does not dispose, is to be distributed according to law; and it is no where provided in the law, that personal estate of an intestate is to be distributed among

some of the children, to the exclusion of others. The law permits individuals, capable of making a will, every privilege in regard to the disposition of their property, which can reasonably be asked. It takes upon itself to dispose of no part of the testator's estate, save only so much thereof, as he himself leaves undisposed of; and how it will dispose of this part of his estate, it makes known to him in its statute of distributions. An individual, then, having property, may, at his death, leave the whole of it undisposed of, or he may dispose of a part of it, dying intestate as to the rest, or he may dispose of everything belonging to him by a residuary clause. His will, as far as it is properly expressed, is the law touching the disposition of his property. A man is to dispose of his property by saying expressly, or by necessary implication, to whom it shall go, not by declaring to whom it shall not go; by declaring who shall be the objects of his bounty, notwithstanding the statute of distributions. The testator gives to some of his children so much (adding,) "and no more;" and is not this the effect of every bequest? The legatees claim the thing bequeathed, but no more. It is impossible, it would seem, to exclude some of the children because of the words "no more," if the testator really did die intestate, in regard to the fund now for distribution. It is said that the testator's will is to be gratified. This is true, when it is consistent with the law. But the law will not sanction a disposition *in this mode*. The authorities last cited, forbid us to give to the words "no more" such an effect. But, according to one of the arguments which have been urged, this is no case of intestacy at all. The rest of the children will take this fund under the will; the words "no more," used in reference to some of the children, give, by *implication*, this undisposed of fund to the others. We do not think that this is a reasonable or safe construction of wills, in this respect, like this. In the first place, a bequest to the other children is a bequest *expressly* of so much, and *impliedly* of no more to them. In the next place, the law does not conclude, that because a man has determined to disinherit one child, he means that all the rest should be his residuary lega-

8    v.8

tees.   This act of disinheriting a child, (leaving him or her, so far as it depends upon his or her father, utterly destitute,) is one which the law cannot regard very favorably.   If the will be so explicit that it must be so, let it be so; but if it must be done, it must, because the testator has expressly declared it; not because he may, as well as may not, have intended it.   It may be that he used those words in the expectation that a child's share of the undisposed residue would be, in his opinion, a sufficient provision for that child, and simply for that reason, gave to such child no more by will.   If such was the necessary effect of annexing the words "no more" to a devise or bequest, then all the children might be disinherited, *unless* there chanced to be one of them who was unnoticed altogether in the will.   These words may be rejected as surplussage, a process not usual in construing wills.   They evidence an intent, but a mere intention will not defeat these children.   *2nd Story's Equity*, sect. 1065, *(a) 4th edition.*

The order of the orphans court excludes *Jeremiah L. Pattison* from any share of the fund to be distributed, and this, because, in the opinion of the court, a conveyance of a tract of land to him, by the deceased, was an advancement to him, and greater in value than a share.   In this there is error.   The fund in the hands of the executors, and to be distributed by the court, consists entirely of personal estate.   With the real estate of the deceased, when and how the deceased has disposed of that estate to his children, the orphans court has no concern. As one of the children of the deceased, he claims a child's portion of the personal estate, and even if there had been a total intestacy, it is by no law made the duty of the orphans court to ascertain what portion of the real estate he received. In a different form, and in a different *forum*, controversies in regard to the real estate, must be settled.

This court is of opinion that *Ann Elizabeth* and *Margaret W. Pattison* are not entitled, either of them, to the sum of fifteen hundred dollars, to be paid out of the personal assets now to be distributed.   If payable at all, it must be claimed of the devisee, who, by the will, is required to pay it.   Accord-

ing to the opinion we have just expressed, the supposed deed to *Jeremiah L. Pattison* is not properly before us, and it is not for us to decide whether he claims the land under the will, or under a valid conveyance, which secured the estate to him before the will took effect. If the the latter, we need not remark that the deceased could not, by his will, charge this land with the payment of $3,000, and certainly he has not made his personal estate answerable for it.

In the appeal by *Stewart* and wife, the order of the court is reversed, and also that portion of it from which *Jeremiah L. Pattison* appeals. In the appeal by *Stewart* and wife, *Birkley* and wife, and others, order affirmed; and in the appeal by *Fooks* and wife, and *Miss Pattison*, the order is affirmed. The costs in both courts to be paid out of the assets of the estate.

<div align="right">

ORDER REVERSED IN PART, AND

AFFIRMED IN PART.