BARNEY DILLEY, BENJAMIN R. EDWARDS and MAR-
GARET EDWARDS *vs.* ARMIDA E. LOVE, and others.
BARNEY DILLEY, as Administrator and Receiver,
&c. *vs.* SAME. ARMIDA E. LOVE, and others *vs.*
BARNEY DILLEY, and others.

*Administrator—Evidence—Act of 1868, chap. 116—Advance-
ment—Evidence of Advancement—Evidence of the Receipt
by Children of money or property from Parent.*

Where an administrator is a party to a suit, and testifies on his own
offer, his testimony may be excepted to, and the exception will be
sustained; but such portions of his testimony as are not excepted
to, will be considered as evidence in the cause.

A gift of money or property by a parent to a child, is presumptively
an advancement, but this presumption may be repelled by evidence
proper for the purpose; in other words, whether such a gift takes
the character and legal properties of an advancement, or those of
a full and absolute gift without a view to a portion or settlement,
depends entirely on the intention of the donor, and that intention
may be ascertained by parol evidence of the donor's declarations
at the time of executing the conveyance or making the gift, or of
the donee's admissions afterwards, or by proof of facts and circum-
stances from which the intention may be inferred.

But while the parent's declarations are admissible to show that what-
ever sums of money or property his children may have received
from him were intended as advancements, and not to create debts,
they are not admissible to prove or establish the *fact* that any of
them had received money or property from him, or the amount so
received; that must be shown like any other fact and according to
the ordinary rules of evidence.

An advancement to a husband by his father-in-law, is an advance-
ment to the wife.

In this case, the evidence shows that the several donations of money
and property made by the intestate to or for his children, and
grandchildren whose parents were dead, were in law advancements.

APPEALS from the Circuit Court for Allegany County, in Equity.

The case is stated in the opinion of the Conrt.

The cause was argued before MILLER, STONE, ROBINSON, IRVING, and BRYAN, J.

*Richard T. Semmes,* and *Benjamin A. Richmond,* for Barney Dilley.

*J. Frank Seiss,* for Lulu L. and Minnie E. Seiss.

*William Walsh,* for James Athey.

*Josiah H. Gordon,* for Armida E. Love, and the heirs of J. Frank Dilley.

MILLER, J., delivered the opinion of the Court.

By our laws of inheritance, it is enacted that if any child or children, or their issue shall have received from the intestate any real estate by way of advancement, they may elect to come into partition with the other parceners, on bringing such advancement, or its value, into hotchpot with the estate descended, and shall not be entitled to claim a share by descent without so bringing in the advancement, if there be another child or children unprovided for. *Code, Art.* 47, *sec.* 31. And by our Statute of Distributions it is declared that if any child or descendant has been advanced by the intestate by settlement or portion, the same shall be reckoned in the surplus for distribution, and if it be equal or superior to a share, such child or descendant shall be excluded, but maintenance or education, or money given without a view to a portion or settlement in life, shall not be deemed advancement. *Code, Art.* 93, *sec.* 126. The manifest design of these

provisions is to have justice done to all the children of the intestate, by equalizing, as near as may be, their respective shares in both his real and personal estate. They do not however, attempt to define what shall constitute an advancement, or to designate the mode in which it shall be made, or the evidence by which it shall be established; but in these respects, the Courts, both in this country and in England, have uniformly given a liberal construction to such enactments, in order to enforce the cardinal doctrine which they announce, that in all such cases equality is equity. And while to this end, certain general rules have been adopted, yet all the authorities concede that much must depend upon the circumstances of each case. As said by BAGGALLAY, L. J., in the recent case of *Hatfield vs. Minet,* (*Law. Rep.* 8, *Ch. Div.* 145.) "In all cases in which the question arises whether payments made by a father, who afterwards dies intestate, to or for the benefit of his children, are to be treated as advances, and in that respect to be set-off in making an ultimate division of his property, *regard must be had to the surrounding circumstances.* The very principle upon which advances are set-off by way of hotchpot, is that of endeavoring, as nearly as possible, to do that which is equal justice among all the children of the dead man." The case now before us is one in which regard to surrounding circumstances, must have a controlling influence, if anything like justice is to be done to the parties interested.

The record shows that Joseph Dilley died on the 16th of March, 1879, at a very advanced age, intestate, and leaving real and personal property, to the value, as we gather from the testimony, of over $100,000. He had five children: two sons, J. Frank, and Barney, and three daughters, Minerva, Margaret and Armida. Of these, Barney, and Margaret, who married Benjamin R. Edwards, are now living. J. Frank died in April, 1879, shortly after his father, leaving a widow and three married daugh-

ters. Minerva married Samuel A. Athey, and died intestate in 1851, (her husband having died in 1849,) leaving one son now living, and two daughters, one of whom married Eli N. Love, and is now living, and the other married J. Frank Seiss, and died intestate some years since, and before the death of her grandfather, leaving two infant daughters her sole heirs-at-law. Armida, the other daughter, married Dr. John Everett in May, 1844, and died intestate in October, 1866, leaving her husband surviving her, who died in May, 1870, and eight children: five sons and three daughters, all of whom are now living.

Barney Dilley obtained letters of administration upon his father's personal estate, and was proceeding to settle the same in the Orphans' Court, when, in June, 1880, a bill was filed by Mrs. Love and her husband, praying for a sale of the real estate for the purpose of partition, and that the proceeeds of the same, together with the surplus personal estate, after payment of debts, may be distributed under the direction of a Court of equity. To this bill, Barney Dilley, in his own right and as administrator of his father, together with all the other heirs-at-law and distributees of the intestate, were made defendants. The principal averments of the bill, are that J. Frank Dilley, Barney Dilley, Mrs. Edwards and her husband, and Mrs. Everett and her husband, received from the intestate in his life-time, large sums of money, and other property by way of advancement upon and out of the proportion of the estate, which would be coming to them, respectively upon the death of their father. The answers deny these averments, and to the issue thus made up the greater part of the large mass of testimony appearing in the record has been directed. The several appeals in the case have been taken by parties dissatisfied therewith, from an order ratifying certain reports and accounts of the auditor, making distribution of the personal estate or a part of it.

Numerous exceptions have been taken to different portions of the evidence, but many of them are of no im-

portance whatever, as the testimony objected to has no material influence in determining any of the disputed questions in the case. There is but one which we deem it necessary to consider, and that relates to the competency of Barney Dilley as a witness. He is a party to the suit as administrator, as well as in his individual capacity, and he has testified upon his own offer. Being thus sued in both capacities, it is insisted that any part of his testimony which goes solely to the question of advancement, and to show what were the intentions of his father at the time he received certain sums of money from him, is admissible under the decision in *Graves, et al. vs. Spedden, et al.*, 46 *Md.*, 527. But in that case there was no executor or administrator to the suit, and we cannot set aside the express terms of the Evidence Act. The language of the law is explicit that where "an executor or administrator is a party to the suit, either party may be called as a witness by his opponent, but shall not be admitted to testify on his own offer, or upon the call of his co-plaintiff or co-defendant unless he is a nominal party merely," and in the face of these terms we cannot interpolate a qualification which the statute itself does not recognize. The Court below was therefore clearly right in sustaining the exceptions taken to the testimony of this witness; but how much of it is thereby excluded? Clearly only those portions excepted to. In *Johnson and Wife vs. Heald, Ex'r*, (33 *Md.*, 352,) the exception was to the *whole testimony* of the witness upon the ground of her incompetency to testify at all in the case, but here the exceptions taken by the complainants are confined to certain questions and answers upon the ground that the witness was incompetent to testify as to such matters. This leaves a large portion of his testimony still remaining as evidence in the cause, for we take it to be clear that if an administrator, a party to the suit, sees fit to go upon the stand and testify for himself on his own offer, and in the course of that testi-

mony makes admissions, or gives evidence which the other party is willing to accept, it is competent for such party to waive the statutory exclusion *pro tanto*, and confine his exceptions to such portions of the testimony as make against him, or as he may deem objectionable. This, as we understand it, was the view of these exceptions taken by the late Judge PEARRE in his very able opinion which appears in the record. He evidently so treated the exceptions and considered the large part of the testimony of Barney Dilley, which was not excepted to, as evidence in the cause. In so doing he, in our judgment, committed no error, and his opinion is not therefore open to the criticisms in this particular, made upon it by counsel in argument; and this brings us to the consideration of the two principal questions in the case.

1st. Are the various sums of money, and portions of property received by the several heirs and distributees from, or paid to or for them by, the intestate in his lifetime, to be regarded and treated as advancements, or as creating debts, or as mere gratuities or absolute gifts?

2nd. What amount has, in point of fact, been so received by, or paid for and on account of, these several heirs or distributees respectively?

*First.* We have found no evidence in the record that the advances conceded or proved to have been made by the intestate, were intended by him as mere gratuities or absolute gifts to his children or grandchildren, and the question therefore is did they constitute as between him and them *advancements* or *debts?* By the decision in *Graves, et al. vs. Spedden, et al.,* and the other adjudications of this Court there cited, it is settled that in this State, as in England, a gift of money or property by a parent to a child is presumptively an advancement, but that this presumption may be repelled by evidence proper for the purpose; in other words whether such a gift takes the character and legal properties of an advancement, or

those of a full and absolute gift without a view to a portion or settlement, *depends on the intention of the donor,* and that intention may be ascertained by parol evidence of the donor's declarations at the time of executing the conveyance or making the gift, or of the donee's admissions afterwards, *or by proof of facts and circumstances from which the intention may be inferred.* In that case the question was whether the donations were advancements or absolute gifts. In the more recent case of *Harley vs. Harley, et al.,* 57 *Md.,* 340, the question was between advancement and debt. In that case the father took and held notes of *one* of his sons, and the Court say, the taking and holding the notes in the form we find them, without any contemporaneous written entry or memorandum to explain the transaction, gave rise to the *prima facie,* if not conclusive presumption, that at the times the notes were taken, they were taken for debts due according to their legal import, and not for advancements made to the maker. This being the legal presumption from the face of the notes, the *onus* of proof is on the party who sets up the advancement, to show by clear and indubitable proof, that what is so clearly apparent to be simply a debt due, *was intended either originally or subsequently to be an advancement instead of a debt.* The proofs relied on to establish the advancement were certain declarations of the intestate to other members of his family, as to his intention or purpose to treat the debts due from his son as advancements with reference to the general division of his estate. But these declarations were *never assented to by the son, or even brought to his knowledge during the life-time of his father,* and appear to have been made more to appease the complaints and apprehensions of his other children in regard to the division of his estate, than anything else. And the Court accordingly held that such loose declarations not substantiated by writing, *nor made to the son, nor assented to by him,* nor accompanied by any act, were not

sufficient to destroy a debt secured by a legal instrument in full force, and to change it into a gift by way of advancement. The law as thus stated must, of course, control our decision of other cases unless the facts make them essentially different. But, in our opinion, the present case discloses a state of facts easily and clearly distinguishable from that in *Harley vs. Harley, et al.*

We have carefully examined the testimony contained in the record, but it is too voluminous to be reviewed in detail. It shows that the intestate, a man of large means, was generous and liberal to his children and grandchildren. To some of them he furnished money to start them in business, and also relieved them from embarrassment by paying their debts, and these and the like benefactions continued from the time his daughters were married, and his sons grew up to manhood, down to the last years of his life. At times he would scold them for their improvidence, but in most cases yielded to their requests, and never failed to relieve their necessities. But while he was thus generous he was also just. He had no favorites but desired that all his children and grandchildren should share his estate equally, as the law provides; and he adopted a plan which he thought would secure this equality of distribution. He knew he was giving and would have to give more to some than to others, and he therefore exacted and took from them their *notes* for the several amounts so from time to time advanced to them respectively. He did this, to use his own language, "so that some should not get all and others nothing, and he would have the notes in proof against them; *and he intended the amounts of these notes to be taken from each one that had gotten money, after he was dead."* The proof does not show that he said this to each one on each occasion and at the exact time the advance was made, but it does show that he did so on more than one occasion, and frequently repeated it to them afterwards; and that they

had frequent talks with each other and with him on the subject, so that his purpose and intention in this respect were perfectly well known and understood in the family and by all the recipients of these bounties.   In fact the reading of the testimony has forced upon us the conviction that each of these parties when he thus received money and gave his note therefor, knew that he was receiving by anticipation a part of his share of the intestate's estate, and that such was the intention of the donor at the time. This intent he declared upon every suitable occasion, adhered to it to the time of his death, and omitted to make a will only because he was assured the law would give effect to his well-known and well understood purposes without a will.   In view of such evidence it must be held that he took and preserved these *notes* as memoranda of *amounts*, and not as evidences of *debts* to be enforced against the makers.   He was the owner of the property and had the sole right to determine the purpose for which he gave it.   In fact the question of advancement is in all cases dependent entirely upon the intention of the donor. That intention can, in a case like this, be ascertained only from his *declarations*, and where they are clear, explicit and unqualified, Courts should not hesitate to receive them as evidence, and give them effect.   The declarations of Mr. Dilley made from time to time, to other children when making other advancements, though all the parties who had received advancements may not have been present at the time, and, under the peculiar circumstances of · this case, even those made subsequently to any of the advancements, are, in our judgment, admissible, not simply to show his intention in a particular case, but his mode and manner of dealing with his family in this respect, as well as his purpose to carry out "a fixed and general policy" in reference to all his donations.   Such declarations, made under such circumstances, may be fairly considered as part of the *res gestæ*, or facts forming part

of the transaction, and in explanation thereof; and their admissibility in evidence is supported by abundant authority. *Graves, et al. vs. Spedden, et al.,* 46 *Md.,* 527; *Merrill, et al. vs. Rhodes and Wife,* 37 *Ala.,* 449; *Speer vs. Speer,* 14 *N. J. Eq.,* 240; *Hicks vs. Gildersleeve,* 4 *Abb. Pr. Rep.,* 1; *Woolery vs. Woolery,* 29 *Ind.,* 254; *Johnson vs. Belden,* 20 *Conn.,* 326; *Merkel's Appeal,* 89 *Penn. State Rep.,* 340; *Watkins, et al. vs. Young, et al.,* 31 *Grattan,* 84.

We are, therefore, of opinion that the several donations of money and property made by the intestate to or for his children and grandchildren, whose parents were then dead, were, in law, advancements, and we accordingly determine, that in the distribution of his estate, both real and personal, they must be treated as *advancements,* and not as *debts.* The grandchildren thus advanced are James Athey, John Everett, and the complainant, Mrs. Love. Among other advances to his son Barney, the proof shows that his father gave him money to go into business in Wellersburgh, in the State of Pennsylvania, and for this he confessed a judgment in that State on the 6th of February, 1860, in favor of his father for $4423.69. Upon this judgment, there are credits amounting to $1282.57, leaving a balance of $3141.12, as of the 10th of February, 1860. This judgment, with this balance due thereon, the father preserved as a voucher, as he did the notes of his son, and, under the evidence, it stands upon precisely the same footing as these notes. This balance must, therefore, be also considered as an advancement. Payment of a debt by a father for a child, is presumptively an advancement, (*Johnson vs. Hoyle, et al.,* 3 *Head,* 56,) and it is clear from the proof, that the intestate in this case, so intended whenever he paid such debts, and we have no hesitation in deciding that such payments must be treated as advancements. Again an advancement to a husband by his father-in-law, is an advancement to the wife. The advancement set up in *Stewart*

*and Wife, et al. vs. Pattison's Ex'r, et al.*, 8 *Gill*, 46, was to the husband of a daughter, and the law upon the subject seems to be well settled. *Bridgers vs. Hutchins,* 11 *Iredell,* 68; *Wilson's Heirs vs. Wilson's Adm'r,* 18 *Ala.*, 176; *Lindsay and Wife vs. Platt,* 9 *Florida,* 150. This covers the case of the son-in-law, Edwards, and also that of Dr. Everett in part.

The case of Dr. Everett, however, is peculiar. Three, at least, of his notes, appear to have been given more than a year before his marriage, and these, of course, must be excluded from the case altogether. There is nothing to show that the intestate advanced him the money represented by these notes in contemplation of his marriage with his daughter, or as a settlement upon her, and upon no principle can they be set up, either as advancements or debts, against her children as distributees of her father's estate. He also gave other notes after marriage and before the death of his wife, and as to these there is no difficulty. We have already said they represent advancements, and must be so treated. Others again were given after the death of his wife, and whether these can be regarded as advancements to, or for the benefit of his children, the grandchildren of the intestate, is a question of more difficulty, and one upon which there may be contrariety of decision or conflict of authority. But in the case of *Barber vs. Taylor's Heirs,* 9 *Dana,* 84, where land had been conveyed to the husband, after the death of his wife, the deed reciting, that it was understood that the donor conveyed the land as part of the portion he had given to his son-in-law, with his daughter, it was held that her children, coming into partition with the other heirs of their grandfather, must bring the land so conveyed to their father into hotch-pot, at its value at the time of the conveyance; and in the very able opinion delivered by Ch. J. ROBERTSON, it is said "there can be no doubt that if a father should vest in a

stranger, the title to property, in trust for a daughter, the estate thus intended for her by such a provision should generally be deemed an advancement, even though by the malconduct of the trustee, she had lost the whole benefit of the provision. A gift of money or other personal property to the husband of the donor's daughter, would, if not otherwise intended, be an advancement to such daughter, though the husband, by wasting or losing it, might prevent his wife from deriving any benefit from it," and her children would be charged in the distribution of their grandfather's estate with the value of the property thus lost or wasted. And in the subsequent case of *Nelson's Heirs vs. Bush's Adm'r,* 9 *Dana,* 104, the same learned Court said, " Whatever, therefore, was given by Bush to his daughter, Mrs. Nelson, or to her husband during their marriage, as·part of her expected share in his estate, and whatever after her death was given by him to her children, *or to her surviving husband* for them, or as a part of the share to which she would have been entitled had she survived her father, is to be considered *as an advancement on account of that share,* and should be brought into hotch-pot, or accounted for by her children claiming distribution in her right." That the advances thus made to Dr. Everett, by his father-in-law, were made for and on account of the children, and because they would be entitled to their mother's share of his estate, and that they were received by the surviving husband, with this understanding, seems to be clearly established by the proof. In fact, the testimony shows beyond dispute, that this very question was discussed between the intestate and Dr. Everett, and other members of the family, and that his purpose and intention in this respect, were well-known, acquiesced in and assented to, by all of them. Such advances must, therefore, be included in the advancements to be charged against and accounted for by the children of Mrs. Everett. No point has been

made in regard to the sums received by Mr. Seiss, the husband of a granddaughter, and it is not clear whether they were received before or after the death of his wife. But at all events, Mr. Seiss, by his own testimony, has made it clear, that this was purely a business transaction between him and the intestate,—a mere loan of money secured by mortgage, and was always treated and considered by both of them, simply as a debt. His children therefore, have nothing to do with it; Mr. Seiss, himself, is alone responsible for the debt to the administrator.

This, we think, disposes of all the questions arising under this branch of the case, and the result is, that the accounts which treat some of these advances as creating debts, and others as advancements simply, must be rejected, and the estate be distributed entirely upon the basis of advancements. By this mode of distribution, not only will the great inequality among the distributees resulting from the fact, that debts bear interest, while advancements do not, be prevented, but the manifestly just and impartial plans and purposes of the intestate, as well as his clearly proved wishes and intentions, be carried out, and the equal and exact justice which the law of advancements contemplates, will, as far as possible, be done to all entitled to share in his estate.

*Second.* We come now to the question of *amounts,* and here the declarations of the intestate must be disregarded. While, as we have said, such declarations are admissible to show that whatever sums of money or property these children or grandchildren may have received from him, were intended as advancements and not to create debts, it is well settled that this is their only effect. They are not admissible to prove or establish the *fact* that any of them had received money or property from him, or the amount so received; that must be shown, like any other fact, and according to the ordinary rules of evidence. There seems to be no question but that the

amounts advanced to the grandsons, James Athey and John Everett, are correctly stated in Account No. 1 accompanying the Auditor's Report No. 2. It there appears that the former received $2650.20, and the latter $2000, and they must be charged with these sums respectively. The granddaughter, Mrs. Love, received $900, and we agree with our brother Ch. J. ALVEY in his opinion in the Court below, that the release of the deed of trust, and the recital in that release, do not, under the circumstances, show that this sum was paid back to the intestate, and Mrs. Love must be charged therewith as an advancement.

But in determining the amounts to be charged against Barney Dilley, Edwards and wife, the children of Mrs. Everett, and the administrators of J. Frank Dilley, the greatest difficulty is encountered. And this arises from the fact that the proof tends to show that many of the notes of Barney Dilley, Edwards, Dr. Everett and J. Frank Dilley, taken by the intestate, were either destroyed by him shortly before his death, or else have been cancelled or destroyed since his death. One of the witnesses whose testimony has a most important bearing on this question is Ackland C. Dilley, a son of Barney Dilley, and, among other things, he swears that he was at his father's house in Cumberland on the 25th of March, 1879, shortly after his grandfather's death, that he knew his father kept his own papers in a bureau drawer in his mother's room, and supposed he had grandfather's papers there too; that he had a curiosity to see these papers, to know what he was worth, and how much each one had had, and he accordingly went up to the room and opened the drawer, and he then says, "I there found grandfather's papers in the large pocket book I knew he always kept them in; I opened the pocket book and found several bundles of notes; the notes making each bundle were joined together; there were Dr. Everett's notes, uncle Frank Dilley's notes, Ben Edwards' notes, father's and other notes; I added Dr. Everett's notes without figuring

any interest, and they amounted to $30,000, uncle Frank's amounted to $12,000, and Ben Edwards' amounted to $28,000, two of these notes of Ben Edwards, one for $10,000 and one for $5000, were signed by Ben and Margaret Edwards; I was just adding the amount of father's notes, and had added to the amount of $33,000, when father came into the room and took the papers from me." Now if we accept this testimony as true the difficulty is overcome, and the questions in controversy can be easily determined. But it was taken in the State of Minnesota, under a foreign commission, accompanied by no cross-interrogatories. Ackland C. Dilley was the only witness examined, and though the commission appears to have been regularly issued, executed and returned, the parties so deeply affected, had, in point of fact, no actual knowledge of what he had sworn to, until a late period in the progress of the case. They then made efforts to counteract its effect, and have introduced some testimony tending, at least, to throw doubt or suspicion upon his credibility, but they have not, by any means, succeeded in so far impeaching him as to justify the Court in throwing out his testimony as false and perjured. But while this is so, we are not disposed to decide such important questions upon the strength of it until the parties in interest have had further opportunity to re-examine or cross-examine this witness. Not only is the amount of money at stake comparatively large, and therefore very important to the parties interested, but the characters for integrity and honesty of some of them are involved, and in our opinion, it is a case where "the purposes of justice will be advanced by the introduction of further evidence." We therefore refrain from deciding these questions at present, upon the evidence now in the record. When the case is remanded, a reasonable time, but not to exceed the period of four months from the time the remanded record reaches the Court below, should be allowed for taking further testimony upon this subject. Such testimony must, however,

be confined to the question of *amounts* as before indicated, and upon the testimony so to be taken in connection with the competent evidence now in the record, the questions thus left open must then be decided. But if no such further testimony be taken, within the period above designated, or if, by such testimony, the credibility of Ackland C. Dilley be not effectually impeached, or what he has already testified to be not otherwise contradicted and overcome, or rendered unworthy of credit, his evidence must of course be received, and have an important if not controlling effect in determining the amounts advanced to these several parties.

A few minor points remain to be decided, and this may be done very briefly. We concur entirely with the Court below in the opinion, that the commissions allowed by the auditor to Barney Dilley, as administrator and collector of rents, and to him and Edwards, as receivers, are sufficient, and that no good ground has been shown for allowing more. We are also of opinion that the several exceptions to the accounts: 1st, because the auditor has charged Barney Dilley with the sum of $118.90 as interest on an amount of rent collected by him in the life-time of his father, and for which he did not account; 2nd, because he has credited him with the sum of $208.30 as a balance on book account; and 3rd, because he has failed to charge him with certain specified sums, alleged (but not satisfactorily proved) to have been collected by him in the life-time of his father, were properly overruled.

Having thus decided all the numerous questions (save those specially reserved) presented by these appeals, we reverse the order appealed from, and remand the cause for further proceedings in accordance with the views expressed in this opinion. The costs must be paid out of the fund in Court.

*Order reversed, and*
*cause remanded.*