# BARRON *v.* JANNEY

[No. 231, September Term, 1960.]

*Decided May 3, 1961.*

*Motion for rehearing filed May 18, 1961, denied June 22, 1961.*

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND, PRESCOTT and HORNEY, JJ.

*William Wilson Bratton* and *B. Conway Taylor, Jr.,* for the appellant.

*Floyd J. Kintner,* with whom were *Kintner & Evans* on the brief, for the appellee.

HORNEY, J., delivered the opinion of the Court.

The primary question posed by this appeal is whether the conveyance of a parcel of land to a child by parents who had

held title thereto as tenants by the entirety constituted a gift or was an advancement.

The chancellor—on a bill in equity filed by John R. Janney, Jr. (son)[1] against Harriet G. J. Barron (daughter) to require her to elect whether she would take and treat as an advancement the lot or parcel of land (known as the "school house lot"), conveyed to her by the parents of both of them, and to surrender to the son all right, title, interest and claim in and to the remainder of the realty of which the parents died seized and possessed—determined that the son was entitled to the whole of the real property of his deceased mother (Frances G. Janney) and to the one-third interest in the realty which had descended to the daughter upon the death of their father (John R. Janney). The father predeceased the mother and both parents died intestate. The basis for the chancellor's decision was that the school house lot (and the improvements thereon) conveyed by the father and mother (who were tenants by the entirety) to the daughter was, in fact, an advancement of the daughter's share of the separate estates of the parents.

The facts surrounding this controversy between a brother and sister (now between a nephew and his aunt) are—in sharp contrast to the legal issues involved—relatively simple. In 1907 the father, who had inherited a one-half interest from his sire, acquired from his brother the remaining one-half interest in a twenty-five acre tract of land in Cecil County improved by various farm buildings and a dwelling house in which the Janneys (and their ancestors) had lived for more than a century. In 1923 the parents "as joint tenants and not as tenants in common" acquired an adjacent tract[2]

---

1. Since John R. Janney, Jr., died after the appeal had been taken, the appellee for the purposes of this appeal is John R. Janney, III, the sole devisee and executor of the estate of the original plaintiff-appellee.

2. Since the conveyance of this tract expressly so provided, it appears that title thereto was vested in the parents as joint tenants and not as tenants by the entirety. See *Fladung v. Rose,* 58 Md. 13; *Wolf v. Johnson,* 157 Md. 112. See also *Hammond v. Dugan,* 166 Md. 402; *Safe Deposit & Trust Co. v. Tait,* 3 F. Supp. 51 (D. C.

containing eighteen acres of unimproved land. The school house lot (of about one-half acre in area and improved by a former county school) was acquired by the parents in 1933 and was the only property held by them "as tenants by the entireties." It was the conveyance of this property, which had been improved at a cost of $11,639.44 (of which the daughter claimed after the trial that she had contributed approximately $1,700), that gave rise to this action.

For nearly twenty years after it had been acquired the school house property (known locally as the Washington School) remained unoccupied and apparently unoccupiable until 1951 when the father at his own expense (except as noted) undertook to restore the school house and to remodel it as a modern dwelling. The remodeling was completed and the daughter moved into the property in 1953. In March of 1955 the father informed the daughter in a written note, signed only by himself, that the remodeled school house was "all [hers] free and clear." And two years later (in March of 1957) the lot with its improvements was formally conveyed to the daughter by a deed executed by both parents.

There was testimony that the daughter moved into the school house property in order to be able to care for her aging parents, and some services were undoubtedly rendered by her for them. But there was also testimony that during the time the daughter occupied the property in question, the son lived at home with his parents and tended to their physical needs until the death of the father in March of 1958 at the age of ninety-four and the death of the mother in March of 1959 at the age of eighty-eight. There was testimony that the conveyance to the daughter was a gift in that the father had stated that the deed to her was "compensation" for the expenditures the father had previously made for and on behalf of the son. But there was also testimony indicating that the father may have intended the conveyance to be an advancement to the daughter. There was no testimony whatsoever as

Md.), *affirmed* 70 F. 2d 79 (4th C. C. A.); *Young v. Cockman,* 182 Md. 246. Cf. *Craft v. Wilcox,* 4 Gill 504; *Annapolis Banking & Trust Co. v. Neilson,* 164 Md. 8.

to the intentions of the mother with respect to the conveyance. The daughter proffered her own testimony to show, among other things, that the parents intended the conveyance to be an absolute gift and not an advancement and that the father had made numerous advancements to the son by way of establishing him in life with a college education, by setting him up in business and by buying him an automobile and other items of personal property. But the chancellor refused to admit any of the proffered testimony on the theory that it was barred by Code (1957), Art. 35, § 3.

On the testimony admitted as evidence, the chancellor found as a fact that the conveyance was an advancement, and, since he was satisfied that the school house property was substantially equal in value—arrived at by appraisals made on or about the time of the trial—to the remainder of the property of which the parents died seized and possessed, the chancellor appointed a trustee to convey all property of the respective intestates, except the school house property, to the son.

On this appeal the daughter in effect contends (i) that Chapter 325 of the Acts of 1916 abolished the doctrine of advancement with respect to real property; (ii) that the chancellor erred when he found as a fact on the evidence produced that there had been an advancement; (iii) that the chancellor misapplied Art. 35, § 3 (of the Code of 1957) in refusing evidence of the facts that had motivated the conveyance to her; and (iv) that the chancellor erred in determining the values of the property alleged to have been advanced and that which remained as of the date of the deaths of the parents intestate.

The concept of advancement, unknown to the early common law, was created by statute. While the source of the doctrine of advancement has not been certainly established, it appears that the first advancement statute, which was a part of the English Statute of Distributions of 1670 (22 and 23 Charles II, c. 10), was based on the custom of London and York, and that the custom must have emanated from the Roman (or civil) law principle of *collatio bonorum* requiring a

bringing into hotchpot. Elbert, *Advancements,* 51 Mich. L. Rev. 665 and 52 Mich. L. Rev. 231.

All of the states in the United States, except New Mexico, have advancement statutes. Most of these statutes specifically apply to both real and personal property, but Maryland is one of five states where the advancement statute does not so specify.[3] Most, if not all of the other jurisdictions combine all descent and distribution statutes under one article or title, contrary to the Maryland statutory plan of codifying the descent statutes in Article 46 and the distribution statutes in Article 93, but we think this peculiarity is without substantial significance. Prior to 1916, the inheritance or descent article, specifically Code (1912), Art. 46, § 31,[4] stipulated that the recipient of real property by way of advancement might elect to come into partition with other parceners "on bringing such advancement, or the value thereof at the time such advancement was received, into hotchpot with the estate descended," and if he did not, neither the advancee nor his issue was entitled to claim a share by descent if there was another child unprovided for.

In 1916, § 31 of Art. 46 (along with §§ 1-23 and §§ 25-28 of the former inheritance statutes not here pertinent) were repealed by Chapter 325 of the Acts of 1916 and the present §§ 1-4 of Art. 46 (of the Code of 1957) were enacted in lieu thereof in order to thereby assimilate "the law relating to the real property of decedents more nearly to the law relating to personal property." Section 1 of Art. 46 now provides in

---

3. The other jurisdictions are Florida, Georgia, Iowa and Kansas. In Iowa, the statute provides that personal property shall be distributed in the same manner and proportions as though it were real property. This, of course, is the exact converse of the situation in Maryland.

4. Section 31 was a part of Chapter 191 of the Acts of 1820, which appears to have been a re-enactment and clarification of the fifth section of the Act to Direct Descents (Chapter 45 of the Acts of 1786). Prior to 1786 advancements were governed by such of the English descent statutes as became a part of the law of Maryland, including some parts of the original Statute of Distributions of 1670.

part that the estate in lands of a person dying intestate thereof shall descend "to those persons who, according to the laws of this State now or hereafter in force relating to the distribution of the personal property of intestates, would be distributees to take the surplus personal property of such intestate, if he had died, possessed of such * * *; and such heirs shall take in the same proportions as are or shall be fixed by such laws relating to personal property." Section 140 of Article 93,[5] concerning the distribution of personalty to a child or children and the descendents of a deceased child, also provides that "if any child or descendant shall have been advanced by the intestate by settlement, or portion, the same shall be reckoned in the surplus; and if it be equal or superior to a share, such child or descendent shall be excluded."

Until the filing of this appeal a question concerning the advancement of real property has not arisen in this Court since the enactment of Chapter 325 of the Acts of 1916, though recently in the case of *Kreamer v. Hitchcock,* 207 Md. 454, 115 A. 2d 255 (1955), involving the right of a widow to claim dower in realty of which her husband had died seized and possessed, we had occasion to remark (at p. 462) that "[s]ections 1 and 2 of Article 46 in practical effect incorporate by reference the provisions of Article 93 relating to the distribution of personal property of intestates." This, of course, includes § 140 of Art. 93 and the advancement provisions set forth therein. But, even though we assume in the instant case, without deciding, that the Legislature had no intention of abolishing the doctrine of advancement with respect to real property when it repealed and reenacted the descent statutes, we think the conveyance of the school house property to the daughter was not an advancement.

The cases generally in Maryland[6] and elsewhere in this country and in England, in recognizing that the purpose of the statutes of descent and distribution is to make such a will for an intestate as he would have been most likely to

---

5. Section 140 (of Art. 93) was originally enacted in 1798 as Chapter 101, sub-ch. 11, § 6.

6. See, for example, *Parks v. Parks,* 19 Md. 323.

make for himself,[7] hold that the doctrine of advancement rests on the supposed desire of an intestate [8] to give to each of his children an equal share or portion of his estate to the end that there should be equality among those having a moral right to his property. Thornton, *Gifts and Advancements*, § 524; Elbert, *op. cit.*, p. 564 (of 52 Mich. L. Rev.).

Furthermore, in *Clark v. Willson*, 27 Md. 693 (1867), it was said at p. 700 that "[a]n advancement is a giving by anticipation the whole or a part of what it is supposed a child will be entitled to, on the death of the parent making it and dying intestate * * * [and] is to be distinguished from a debt due, or from an absolute or independent gift or conveyance, having no view whatever to a portion or settlement." See also *Harley v. Harley*, 57 Md. 340 (1882); Thornton, *op. cit.*, § 525. However, where a gift from a parent to a child is unexplained, or a conveyance is silent as to its purpose, a court of equity—when there is a dispute as to its character —must decide whether the transaction constitutes a gift or an advancement. *Clark v. Willson, supra.* Under such circumstances, while the presumption is that the gift is an advancement, that inference is subject to being rebutted or repelled by proper evidence. *Dilley v. Love*, 61 Md. 603 (1884); *Clark v. Willson, supra.* But whether such gift takes the character and legal attributes of an advancement, or those of an absolute gift, depends on the intention of the donor at the time the gift was made or the conveyance was executed. *Dilley v. Love, supra; Graves v. Spedden*, 46 Md. 527 (1877); *Thornton, op. cit.*, § 580.

From what the cases invariably say are the intrinsic elements of an advancement, we think it is apparent that the transaction in this case could not and did not constitute an

---

7. Lord Chief Justice Raymond, in the leading case of *Edwards v. Freeman*, 2 P. Wms. 436, 24 Eng. Rep. 803, stated the concept thus: "* * * the statute of distribution * * * makes such a will for the intestate, as a father, free from the partiality of affection, would himself make * * *."

8. The question of advancement can only arise in cases of actual or total intestacy. See *Pole v. Simmons*, 45 Md. 246; *Hayden v. Burch*, 9 Gill 79; *Stewart v. Pattison*, 8 Gill 46.

advancement. It has been said that one of the essential elements of every advancement is that the gift must have been a part of the estate of a donor, which upon his death would descend to his heirs but for the fact that, by his act in making the gift, it had been separated from or taken out of his estate. *Rickenbacker v. Zimmerman*, 10 S. C. 110 (1878). See also *Callender v. McCreary*, 4 How. 356 (Miss. 1840). As we see it, a gift, in order to be valid as an advancement under the law of this State, must have come out of the property of one or the other of the parents and not out of property they held, not by moities, but by the entirety, the whole of which would remain in the survivor, and of which the heirs of the spouse first to die would take no part.[9] See Thornton, *op. cit.*, § 545.

Thus, in the case at bar, where at the time the conveyance was executed neither of the parents could have devised the property, or, which is more to the point, neither of them could have died intestate seized and possessed thereof, we think that there could not have been an advancement because the basic prerequisite of intestacy was missing.

For the reasons herein stated, we hold that the conveyance was an absolute gift and not an advancement. We must therefore reverse the decree and remand the case for the passage of a decree in conformity with this opinion. With this holding we do not reach the other questions raised by the appeal.

> *Decree reversed and case remanded for the passage of a decree in conformity with this opinion; appellee to pay the costs.*

---

9. It is interesting to note that community property may be the subject of advancement and a gift thereof by parents to a child is collated one-half to the father's estate and one-half to the mother's. 26A C.J.S., *Descent and Distribution*, § 96. But while community property and an estate by the entirety have many characteristics in common and differ in only a few, the latter is distinguishable from the former in that the surviving spouse takes his or her half of community property directly, and in case there are no descendents of the other spouse, but not otherwise, takes the other one-

---

half by right of survivorship, and in that the interest of each spouse is subject to testamentary disposition. *Blackman v. Blackman,* 43 P. 2d 1011 (Ariz.).